MARTIN, Appellee,

v.

DILLOW; Cincinnati Insurance Company, Appellant.

[Cite as *Martin v. Dillow* (1994), 93 Ohio App.3d 108.]

Court of Appeals of Ohio,
Summit County.

No. 16302.

Decided Feb. 9, 1994.

*Jack Morrison, Jr.,* for appellee.

*John Gannon,* for Cincinnati Insurance Company, appellant.

BAIRD, Judge.

This cause comes before the court upon the appeal of Cincinnati Insurance Company ("CIC") from the judgment of the Summit County Court of Common Pleas denying it any right to reimbursement of benefits it paid to its insured, the appellee, Barbara J. Martin. We reverse.

Martin was covered by automobile insurance issued by CIC when she was involved in an accident resulting in compensable injuries. Thereafter, pursuant to its policy obligation, CIC paid Martin $5,000 in medical benefits. When she received those benefits, Martin signed a medical subrogation agreement assigning to CIC the proceeds of any settlement with or judgment against the person liable for her medical expenses.

Meanwhile, Martin sued the tortfeasor and the jury awarded her $20,000. This court affirmed the jury verdict. *Martin v. Dillow* (June 3, 1992), Summit App. No. 15330, unreported, 1992 WL 126127. In payment of the judgment, the tortfeasor's insurance company issued two checks totalling $20,000: one in the amount of $15,000 made payable to Martin and one in the amount of $5,000 made payable to Martin and CIC.

After Martin refused to reimburse CIC for the $5,000 benefit payment, CIC intervened and moved the court to order Martin to do so. Thereupon, the court ruled that Martin was under no obligation to reimburse CIC, since her loss, including her costs of collection, exceeded the combined amounts of her tort award and insurance benefit. CIC appeals, asserting a single assignment of error:

"The trial court erred in denying an insurer's subrogation claim where the facts and the contractual policy language clearly establishes [*sic*] the insure[r]'s right to subrogation to the full amount of its payment and further erred in awarding the funds to the insured."

The insurance contract between CIC and Martin provides in part:

"B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

"1. Hold in trust for us the proceeds of the recovery; and

"2. Reimburse us to the extent of our payment."

That language, together with the separate medical subrogation agreement, specifically assigns to CIC the proceeds of Martin's judgment against the tortfeasor, up to the amount of its payments to her. Therefore, this case must follow the line of cases in which the insured buys an insurance policy containing similar subrogation and assignment language: *Ervin v. Garner* (1971), 25 Ohio St.2d 231, 54 O.O.2d 361, 267 N.E.2d 769, and *Peterson v. Ohio Farmers Ins. Co.* (1963), 175 Ohio St. 34, 23 O.O.2d 311, 191 N.E.2d 157. The Ohio Supreme Court enforced an insurer's subrogation right in *Peterson* when it held:

"[W]here the policy subrogation provisions and the subrogation assignment to the insurer convey all right of recovery against any third-party wrongdoer to the extent of the payment by the insurer to the insured, an insurer, who has cooperated and assisted in recovering from the wrongdoer, is entitled to be indemnified first out of the proceeds of such recovery." *Id.* at syllabus.

Significantly, in *Ervin,* the court made it clear that the insurer's right of subrogation is not dependent upon its active cooperation in the effort to recover from the tortfeasor. *Ervin,* 25 Ohio St.2d at 237, 54 O.O.2d at 364–365, 267 N.E.2d at 772–773. In that case, the insurer offered to cooperate in the suit, but the insured never specifically followed up on its offer. The court contrasted that circumstance with cases (such as *Newcomb v. Cincinnati Ins. Co.* [1872], 22 Ohio St. 382) in which the insurer refused to cooperate and reimbursement was denied.

In the case at bar, the insurer had no notice of the insured's suit against the tortfeasor until after it had paid benefits. Since CIC never refused to cooperate, the contract language must be enforced.

Martin relies on cases following *Newcomb* in which the insurer's equitable subrogation rights were secondary to the insured's full compensation. In that case, there was no contract provision for subrogation; the insurer relied solely on the "doctrine of subrogation," which the court affirmed was "of the highest equity." *Id.* at 387. The court then went on to limit the insurer's equitable subrogation. It held that the insurer may recover only the amount of its benefit paid which remains after the insured has been fully compensated, including his expenses incurred in the recovery. *Id.* at 388.

In contrast, the case at bar presents no reason to apply equitable principles because the relationship between the parties was established and defined by contract. While it may not seem fair that the insured cannot apply insurance money to her total accident-related losses, "[c]ases of contractual interpretation should not be decided on the basis of what is 'just' or equitable. This concept is applicable even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may benefit from the work. Where * * * written documents exist, it is the court's duty to interpret their meaning, and reach a decision by using the usual tools of contractual interpretation * * * and not by a determination of what is fair, equitable, or just." *Ervin,* 25 Ohio St.2d at 239–240, 54 O.O.2d at 366, 267 N.E.2d at 774.

The terms of Martin's insurance policy and the medical subrogation agreement are clear and unambiguous. They convey to CIC any recovery from the tortfeasor, limited only by the amount of the benefits CIC paid to Martin. Accordingly, the judgment of the trial court is reversed and the case is remanded for further action consistent with this opinion.

*Judgment reversed
and cause remanded.*

REECE, P.J., and COOK, J., concur.