ZINADER et al., Appellants,

v.

COPLEY–FAIRLAWN CITY SCHOOL DISTRICT et al., Appellees.

[Cite as *Zinader v. Copley–Fairlawn City School Dist.* (1994), 95 Ohio App.3d 623.]

Court of Appeals of Ohio,
Summit County.

No. 16607.

Decided July 13, 1994.

*James Gutbrod,* for appellants.

*John Burkholder* and *Scott Peters,* for appellees.

---

REECE, Presiding Judge.

The appellants, Corinne and David Zinader ("the Zinaders"), appeal from the trial court's entry of summary judgment in favor of the appellees, the Copley–Fairlawn City School District and Klais & Co., Inc., the administrator of the school district's Health Benefit Plan. We affirm.

Corinne Zinader is an employee of the Copley–Fairlawn City School District. As a full-time employee, she and her husband David are covered by the school district's Health Benefit Plan. On January 1, 1991, the Zinaders were involved in an automobile accident caused by another driver's negligence. As a result of the accident, the Zinaders sustained serious injuries, with Corinne incurring $27,000 and David $55,000 in medical expenses. The Zinaders applied for benefits under

the health plan to cover their accident-related medical expenses. The appellees requested that the Zinaders execute subrogation agreements as required by the terms of the health plan before receiving the medical benefits. Upon advice of counsel, the Zinaders refused to sign the subrogation agreements and as a result were denied benefits by the appellees.

Apparently, during the same time period, the Zinaders had entered into settlement discussions with the negligent driver's insurer, Motorists Mutual Insurance Company. Eventually, the Zinaders settled with Motorists Mutual for $100,000, which represented the negligent driver's $50,000 per person policy limits, and executed full releases on behalf of Motorists Mutual and the negligent driver. The Zinaders entered into this settlement and release without the appellees' knowledge or consent. The Zinaders also received $100,000 ($50,000 each) through an underinsured motorist policy they had with Nationwide Insurance Company.

After settling with the automobile insurers, the Zinaders again applied for medical benefits under the appellees' health plan. The appellees denied this request on February 26, 1992, asserting that the Zinaders had violated the subrogation provisions of the health plan. In response, the Zinaders brought a declaratory judgment action, claiming that they were entitled to recover their accident-related medical expenses from the health plan. Both parties moved for summary judgment and responded in opposition. On December 10, 1993, the trial court granted the appellees' motion for summary judgment and denied the Zinaders' motion for summary judgment. The Zinaders appeal, raising as their single assignment of error the trial court's entry of summary judgment in favor of the appellees.

■ In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard as the trial court and must decide, after viewing the evidence most strongly in favor of the nonmoving party, whether the moving party is entitled judgment as a matter of law. *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1342–1343. The trial court found that by entering into a settlement and release without the appellees' knowledge, the Zinaders had violated the health plan's subrogation and third-party recovery provisions and therefore were not entitled to recover under the plan as a matter of law. We agree.

■ The general rule is that a clear and unambiguous subrogation clause is a valid and enforceable contract provision. *Mehl v. Motorists Mut. Ins. Co.* (1992), 79 Ohio App.3d 550, 553, 607 N.E.2d 897, 898–899. The Zinaders contend that the subrogation clause in effect at the time of the accident was ambiguous; consequently, they claim that the doctrine of equitable subrogation, as defined in

*Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, controls their right to recover under the health plan, not the plan's subrogation provision. This court recently addressed a similar argument in *Martin v. Dillow* (1994), 93 Ohio App.3d 108, 637 N.E.2d 961. In *Martin,* we found the following contract language to be a valid and enforceable subrogation clause:

"B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

"1. Hold in trust for us the proceeds of the recovery; and

"2. Reimburse us to the extent of our payment." *Id.* at 108, 637 N.E.2d at 961–962.

At the time of the Zinaders' accident, the contract language at issue in this case provided:

"In the event benefits are paid for charges incurred by an employee as a result of Accidental Bodily Injury or Illness sustained by such employee or any of his covered Dependents,

"(1) the employee will reimburse the Plan to the extent of such benefit payments (a) out of any recovery by the employee (whether by settlement, judgment or otherwise) from any person or organization responsible for causing such Injury or Illness, or from their insurers * * *.

"(2) the employee or Dependent will execute and deliver such instruments and papers as may be required by the Plan * * * and do whatever else is necessary to secure the rights of the Plan under (1) above."

In comparing the subrogation language in *Martin* with the subrogation language contained in the health plan at the time of the Zinaders' accident, we find no significant difference between the two subrogation provisions. Accordingly, the health plan's subrogation clause was a valid and enforceable contract provision. As a result, the Zinaders' additional argument that revision of the health plan after their accident is evidence of prior ambiguity is without merit.

■ The Zinaders next contend that the health plan's subrogation clause, by its own terms, was not effective until the plan actually paid out benefits to an insured. Thus, the Zinaders argue that the subrogation clause was not in effect at the time they executed the settlement and release because they had not received any benefits under the plan. This argument is also without merit.

■ First, the health plan's subrogation clause expressly required the Zinaders to execute whatever documents were necessary to secure the plan's subrogation rights. Likewise, the plan's "Third Party Recovery" provision explicitly required the Zinaders to execute any necessary documents to protect the plan's subrogation rights and to "do nothing to prejudice the [p]lan's rights." The

"Third Party Recovery" provision further provided that if an insured prejudiced the plan's right of recovery, "such prejudicial action will bar such persons from receiving benefits under the [p]lan."

Prior to the settlement and release, the Zinaders requested benefits under the health plan but refused to execute subrogation agreements as required by the plan. By not executing the subrogation agreements, the Zinaders prejudicially affected the appellees' ability to protect and exercise their subrogation rights. Pursuant to the terms of the "Third Party Recovery" provision, such prejudicial action by the Zinaders was sufficient to bar them from receiving benefits under the plan as a matter of law.

Moreover, we also reject the Zinaders' argument that a right of subrogation does not attach until the insurer actually pays policy benefits to the insured. In *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 31, 521 N.E.2d 447, 455–456, modified in part in *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, the Ohio Supreme Court held:

"[A] right of subrogation * * * is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. Such right constitutes a 'real and existing' right at any time the injured insured is in a position to release a liable party from its liability. It is, therefore, both just and reasonable that an insurer require, as a *precondition* to coverage * * * that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right." (Emphasis added.)

Even though *Bogan* dealt with underinsured motorist coverage and its attendant statutory intricacies, we find the Supreme Court's reasoning to be persuasive in this case. The health plan's subrogation clause created a full and present right of subrogation in the appellees anytime an insured incurred charges as a result of accidental bodily injury. The conditional language, "[i]n the event benefits are paid," represented a precondition to the appellees' exercising their right of reimbursement, a derivative subrogation right, but was not a precondition to the right of subrogation itself, which attached at the time the Zinaders incurred medical charges as a result of the automobile accident. Therefore, we find that the appellees' subrogation right attached at the time the Zinaders incurred their medical expenses and was not contingent upon the appellees' making payments to the Zinaders for those expenses. Cf. *Smith v. Travelers Ins. Co.* (1977), 50 Ohio St.2d 43, 4 O.O.3d 114, 362 N.E.2d 264; *Am. States Ins. Co. v. Fletcher* (1990), 69 Ohio App.3d 598, 591 N.E.2d 320.

■ Finally, an insured's settlement and release of a liable party without the knowledge or consent of his insurer prejudicially affects the insurer's contractual

right of subrogation and is a material breach of the insurance contract. *Bogan,* 36 Ohio St.3d at 31, 521 N.E.2d at 455–456; *Mehl,* 79 Ohio App.3d at 553, 607 N.E.2d at 898–899; *Fletcher,* 69 Ohio App.3d at 601, 591 N.E.2d at 321–322. Accordingly, by executing a settlement and release with the negligent driver and his insurance carrier, the Zinaders prejudiced the appellees' right of subrogation and materially breached the health plan contract as a matter of law. The Zinaders' assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN and COOK, JJ., concur.