DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiffs-appellants Gene and Patsy Colegrove appeal the judgment of the Summit County Court of Common Pleas in favor of the defendants-appellees. We reverse.
This appeal arises out of an automobile accident which occurred on March 23, 1992. The accident involved three vehicles. One vehicle was operated by Judy King, who is not a party to the present action. Another vehicle was operated by Drinda Weyrick. Gene Colegrove was operating the third vehicle. Gene suffered extensive and permanent injuries as a result of the accident and sustained damages in excess of $1,000,000. Patsy's only claim as a result of this accident is for loss of consortium.
The Colegroves filed a complaint against King in the Court of Common Pleas of Summit County. The Colegroves settled with King and Albert Mobley, the owner of the vehicle that King was driving.
On February 24, 1994, Gene and Patsy Colegrove filed a complaint in the Court of Common Pleas of Summit County against Weyrick. On October 7, 1994, the Colegroves filed their first amended complaint, adding Michigan Millers Mutual Insurance Company (Michigan Millers") as a defendant. At the time of the accident, the Colegroves were insured by Michigan Millers for liability and for uninsured/underinsured motorists in the amount of $50,000 per person and $100,000 per accident.
Michigan Millers answered the complaint, reserving the right to amend its answer. On March 21, 1995, Michigan Millers moved for leave to file an amended answer, instanter. This amended answer included as an affirmative defense that coverage was excluded for bodily injury "[i]f that person or the legal representative settles the `bodily injury' claim without our consent." Attached to the amended answer was the release agreement between the Colegroves and King and Mobley. This release agreement, executed January 7, 1993, stated in typed-in, capital letters that "THIS RELEASE IS FOR PAIN AND SUFFERING ONLY."
King and Mobley were insured by Travelers Insurance Company ("Travelers"). Travelers provided liability coverage to King and Mobley in the amount of $50,000 per person and $100,000 per accident. Travelers paid $45,000 consideration to the Colegroves in exchange for the release. The Colegroves dismissed their lawsuit against King.
On April 11, 1995, Gene Colegrove voluntarily dismissed his lawsuit against Weyrick, without prejudice. On June 13, 1995, Michigan Millers moved the trial court for summary judgment. In its motion for summary judgment, Michigan Millers argued that it did not breach its duties under the policy and that the Colegroves had breached their duty to notify Michigan Millers of any settlement or to obtain Michigan Millers' consent to enter into the settlement agreement with King, Mobley and Travelers. Michigan Millers claimed that the release executed by Travelers and the Colegroves was a complete release of any and all claims. Michigan Millers argued that it had not waived its rights to subrogation, yet those rights had been barred as a result of the release agreement.
The Colegroves opposed Michigan Millers' motion for summary judgment, and cross-moved for summary judgment. The Colegroves argued in their cross-motion for summary judgment that Michigan Millers knew of and participated in the settlement negotiations between the Colegroves, Travelers and King, but that Michigan Millers did nothing to preserve its subrogation rights. However, the Colegroves submitted no evidence of Michigan Millers' knowledge of or participation in the negotiations. In addition, the Colegroves argued that the release agreement between them and Travelers, King, and Mobley was not a complete release of the Colegroves' claims.
On October 31, 1995, the trial court denied Michigan Millers' motion for summary judgment. On August 12, 1996, the trial court denied the Colegrove's cross-motion for summary judgment.
A trial was held before the court on October 3, 1996. Paul W. Green, Branch Claims Manager for Michigan Millers, testified that Michigan Millers received notification of the March 23, 1992 accident. Green set up three separate line items in the Colegroves' claim file: one for medical payments coverage; one for collision coverage; and one for uninsured/underinsured motorists coverage. Green testified that these three line items are set up as a matter of course pending further investigation into the matter. According to Green, the Colegroves presented claims only for collision damage and medical payments.[1] Green testified that the Colegroves did not notify Michigan Millers of the settlement and release agreement with King, Mobley and Travelers. On June 10, 1994, the Colegroves, through counsel, presented to Michigan Millers a claim for underinsured motorist coverage under their policy. On December 5, 1996, the trial court issued its "Findings of Fact and Conclusions of Law" ("order"). In its order, the trial court stated that Patsy's execution of the release extinguished Patsy's claim against King for loss of consortium, because to hold otherwise would mean that Patsy's execution of the release agreement was a "meaningless act." However, the trial court found that Gene's execution of the release agreement extinguished only his claim for damages for pain and suffering.
As for the Colegroves' duty to notify Michigan Millers of an underinsured motorist claim, the trial court found that the failure of the Colegroves to comply with the notice provisions of their policy barred enforcement of any underinsured motorist claim. The trial court granted judgment for Michigan Millers and against the Colegroves. The Colegroves appeal, assigning two errors. We will address these assignments of error together, as they are interrelated.
The Colegroves' first assignment of error states:
 THE TRIAL COURT ERRED IN FINDING THAT THE CLAIM OF PATSY COLEGROVE FOR LOSS OF CONSORTIUM WAS EXTINGUISHED BY ENTERING INTO A RELEASE THAT SPECIFIED THAT THE RELEASE WAS FOR PAIN AND SUFFERING ONLY.
The Colegroves' second assignment of error states:
 THE TRIAL COURT ERRED IN RULING THAT GENE COLEGROVE'S CLAIM FOR UNINSURED/UNDERINSURED COVERAGE WAS BARRED BY HIS FAILURE TO NOTIFY THE INSURER OF THE FILING AND PARTIAL SETTLEMENT OF HIS CLAIM AGAINST THE TORTFEASOR.
 A. The Savoie Decision
The automobile liability policy with Travelers, under which King was covered, had per person and per accident limits equivalent to the Colegroves' Michigan Millers uninsured/underinsured limits. Ohio law at the time of the March 23, 1992 accident provided that underinsured motorist coverage was not available to an insured if the insured's limits of liability were the same as those of the tortfeasor. Hill v. Allstate Ins.Co. (1990), 50 Ohio St.3d 243, at the syllabus. The Supreme Court of Ohio interpreted R.C. 3937.18, the statute governing uninsured and underinsured motorist coverage, in Savoie v. Grange Mut. Ins.Co. (1993), 67 Ohio St.3d 500 and overruled its prior decision inHill, supra. In Savoie, the Court held that:
 An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. (Hill v. Allstate Ins. Co.
(1990), 50 Ohio St.3d 243, 553 N.E.2d 658, overruled.)
Id., paragraph three of the syllabus. Thus, motorists who hold an underinsurance policy and who suffer from injuries caused by an automobile accident "are entitled to collect up to the full limits of their underinsurance policy to the extent that their damages exceed the amounts which the tortfeasor's insurer has already paid to them."[2] Id. at 508.
The Colegroves' automobile insurance policy through Michigan Millers provides uninsured/underinsured coverage in the amount of $50,000 per person and $100,000 per accident. The Colegroves therefore argue that Michigan Millers owes an amount up to the policy limits.
Part E of the Colegroves' policy sets forth the insured's duties after an accident or loss and provides that Michigan Millers must be notified promptly in the event of an accident or loss. In addition, the insured has a duty to cooperate with Michigan Millers in the settlement of any claim and to send Michigan Millers copies of the legal papers if suit is brought.
Addressing their duty to notify Michigan Millers of their claim for underinsured motorist coverage, the Colegroves argue that they were excused from the notice requirements by virtue of there being no claim for any damages in excess of King's and Mobley's liability limits. Therefore, the argument goes, notification would have been a futile act and the law does not require futile acts.
However, Part F of the Colegroves' automobile insurance policy provides in part:
 If we make payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
 1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
Michigan Millers argues that the release agreement with King and Mobley cost it its right to subrogation. Therefore Michigan Millers argues that it has no duty to pay under the underinsured motorist coverage. We will first discuss the Colegroves' duty to notify Michigan Millers of their claims, then we will discuss the Colegroves' duty to protect Michigan Millers' subrogation rights.
 B. The Duty to Notify
Part E of the Colegroves' insurance policy with Michigan Millers governs the duties after an accident or loss and provides in part:
 A. We must be notified promptly of how, when and where the accident or loss happened. * * *
B. A person seeking coverage must:
 1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
 2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
* * *
 C. A person seeking Uninsured Motorists Coverage must also:
* * *
 2. Promptly send us copies of the legal papers if a suit is brought.
The Colegroves notified Michigan Millers of the accident approximately one week after the accident. While Michigan Millers had notice that claims would likely be made under the policy, the Colegroves did not specifically notify Michigan Millers of an underinsured motorist claim at that time. Nevertheless, Michigan Millers set up a claim line for an underinsured motorist claim in the Colegroves' file, as was its standard practice. Because the law in Ohio, pursuant to Hill, supra, precluded an underinsured motorist claim where the tortfeasor's policy limits equaled the uninsured\underinsured policy limits of the insured, Michigan Millers closed the claim for underinsured motorist coverage on April 14, 1992, after determining that King's liability limits were identical to the Colegroves' limits for underinsured motorists coverage. Michigan Millers received a letter from an attorney dated November 4, 1993 informing Michigan Millers that he was representing the Colegroves in the matter. Michigan Millers re-opened the Colegroves' claim on December 1, 1993.
Michigan Millers argues that the Colegroves failure to notify it of an underinsured motorist claim relieved Michigan Millers of its duty to provide coverage to the Colegroves. The Colegroves cite West American Ins. Co. v. Hardin (1989), 59 Ohio App.3d 71, for the proposition that their failure to notify or delay in notifying Michigan Millers of the underinsured motorist claim should be excused where the prevailing law foreclosed any claim. In West American, a father ran into his two year-old daughter with his car. At the time of the accident, 1978, the defense of parental immunity was available to the father. Parental immunity was abolished in Ohio in 1984. Id. at 72. Thereafter, a claim to the father's insurer was asserted on behalf of the child. In deciding whether the delay in notifying the insurer of the claim relieved the insurer of its duty to pay under the policy, the court of appeals stated that the purposes of a notice requirement were to allow the insurer to form an intelligent estimate of its rights and liabilities, and to afford it an opportunity to investigate the claim in order to prevent fraud and imposition upon it. Id. at 73. The traditional view on this matter "treats proper notice as a condition precedent to coverage. An insured's unexcused delay in satisfying the notice requirements relieves the insurer of its duties to defend or indemnify, regardless of whether the delay prejudiced the insurer." Id. This court has held that a provision in an insurance policy requiring prompt notice to an insurer requires notice within a reasonable time in light of the circumstances. Thomas v. State Farm Mut. Auto Ins.Co. (April 17, 1991), Summit App. No. 14888, unreported, at 4. Unreasonable delay may be presumed prejudicial to the insurer.Id.
Requiring notice to be given to the insurer affords the insurer a reasonable opportunity to protect its subrogation rights by evaluating such factors as * * *: the amount of settlement, the amount of liability insurance remaining, the amount of assets held by the tortfeasor, the likelihood of recovery via subrogation, and the expenses and risks of litigating the insured's cause of action. After considering these factors, the underinsurer may simply decide to permit the settlement and release, to pay the underinsured motorist before the release is given, or to substitute its payment to the insured in an equal amount to the proposed settlement and pursue the tortfeasor personally. Back v. American StatesIns. Co. (Nov. 1, 1995), Montgomery App. No. CA 15195, unreported, citing McDonald v. Republic-Franklin Ins. Co.
(1989), 45 Ohio St.3d 27. The duty to notify and the insurer's right of subrogation, which we will discuss in the next section, are closely intertwined.
We must address two questions relating to the issue of notice of the Colegroves' underinsured motorist claim: 1) was the delay in notifying Michigan Millers unreasonable in light of all the surrounding circumstances, and; 2) did the delay result in prejudice to Michigan Millers?
Was the Colegroves' delay in notifying Michigan Millers unreasonable? The Colegroves' underinsured motorist claim arose when the accident occurred. In fact, Michigan Millers, knowing that three separate claims were possible, including a claim for underinsured motorist coverage, set up three separate claim lines in the Colegroves' claim file, pending further investigation into the matter.
The Colegroves actually notified Michigan Millers of the underinsured motorists claim on October 7, 1994, when they served their amended complaint on Michigan Millers. However, Michigan Millers had already re-opened the Colegroves' file and uninsured claim upon receiving notice of representation from the Colegroves' attorney. This occurred approximately two months after the Savoie decision. Approximately ten months later, official notice of the underinsured claim was given to Michigan Millers in the form of the amended complaint adding Michigan Millers as a party to the lawsuit against Drinda Weyrick. In light of the surrounding circumstances, it was not unreasonable for the Colegroves to delay notifying Michigan Millers for approximately one year after the Savoie decision, which established a duty on the part of the insurer to pay underinsured claims up to the policy limits even where the tortfeasor's liability limits were identical to the underinsured limits of the injured party.
In addition, this delay did not harm Michigan Millers. Michigan Millers closed the Colegroves' underinsured claim on April 14, 1992. At that time, Michigan Millers did not intend to pursue the matter further, apparently relying on the prevailing law in Ohio, which imposed no duty upon an underinsurer to provide benefits when the tortfeasor's liability limits were identical to its insured's underinsurance limits. If any evidence was compromised or if any rights were prejudiced, it was due to Michigan Millers' reliance upon the existing pre-Savoie law, and not due to the Colegroves delay in notifying it of their underinsured motorist claim. This conclusion, however, does not dispose of the Colegroves' duty to notify Michigan Millers of the settlement agreement with and release of King and Mobley. We will discuss the settlement and release and their effect on Michigan Millers' subrogation rights in the next section.
 C. The Subrogation Clause
Subrogation clauses in insurance policies are valid and enforceable. Motorists Mut. Ins. Co. v. Nussbaum (1994),107 Ohio App.3d 562, 564. An insured who destroys his insurer's subrogation rights without the knowledge of his insurer does so at his peril. Id. By releasing King and Mobley from liability for pain and suffering in exchange for $45,000, Gene destroyed Michigan Millers' subrogation rights as to the pain and suffering claim. Gene Colegrove's signing of a covenant not to sue the tortfeasor is a breach of the subrogation clause. See Frazier v.United Ohio Ins. Co. (June 27, 1995), Franklin App. No. 94APE09-1339, unreported. In Frazier, the court relied upon the following reasoning by the Supreme Court of Ohio in concluding that the Savoie decision has no effect on the insurance company's right to subrogation, but merely on the amount the insurance company can claim against the tortfeasor. Frazier, supra.:
 "[The insurance company's] subrogation right * * * is based not only upon the words of its contract, but upon much prior case law and the specific statutory expression of the General Assembly. As such, a right of subrogation, the protection of which is a precondition to underinsured motorist coverage is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor. Such right constitutes a `real and existing' right at any time the insured is in a position to release a liable party from its liability. It is, therefore, both just and reasonable that an insurer require, as a precondition to coverage, not that such subrogation rights will result in reimbursement to the insurer, but that the injured party not compromise with the tortfeasor in such a way as to destroy the insurer's subrogation right. Such compromise clearly prejudices the subrogation right of the injured party's insurer."
(Emphasis sic) Frazier, supra, quoting Bogan v. Progressive Cas.Ins. Co. (1988), 36 Ohio St.3d 22, 30-31. The insurer may still sue the tortfeasor personally, if the insured has not released the tortfeasor from future liability. See Back v. American States Ins.Co. (Nov. 1, 1995), Montgomery App. No. CA-15195, unreported. "Therefore, an insured who settles with and releases an underinsured tortfeasor before giving her insurer notice is precluded from bringing an action against [his] insurer for underinsured motorist benefits." (Citation omitted) Id.; see alsoLanahan v. Nationwide Mutual Ins. Co. (Nov. 17, 1995), Lucas App. No. L-95-032, unreported. The failure to notify an insurer of a settlement with the tortfeasor is a material breach of the insurance contract and relieves the insurer of the duty to provide insurance benefits. Id., Zinander v. Copley-Fairlawn City Sch.Dist. (1994), 95 Ohio App.3d 623, 627-628; see, also Bogan v.Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, 30, overruled on other grounds by McDonald v. Republic-Franklin Ins. Co. (1989),45 Ohio St.3d 27. These cases discuss the effect of general orfull releases on an insurer's right to subrogation. The case at bar involves a partial release.
 1. Gene's Claims
The Colegroves argue that the release agreement entered into by the Colegroves and King and Mobley was for "pain and suffering" only. Therefore, they argue, if any right of subrogation was destroyed by the agreement, it was only as to Gene's claim for pain and suffering and Michigan Millers still has a duty to pay, up to the policy limits, all other unreleased claims of Gene and Patsy arising out of the March 23, 1992 accident. We agree.
In interpreting a contract, additional terms supersede the original terms to the extent the two are contradictory. Ottery v.Bland (1987), 42 Ohio App.3d 85, 87. The printed portion of the release stated the following:
 [W]e, GENE COLEGROVE and PATSY COLEGROVE, husband and wife, and each being of lawful age, for the sole consideration of FORTY FIVE THOUSAND AND 00/100 dollars ($45,000.00) to us in hand paid, the receipt whereof is hereby jointly and severally acknowledged, have remised, released, and forever discharged and by these presents do, severally and jointly, for ourselves and for our heirs, executors, administrators, and assigns, do hereby remise, release and forever discharge ALBERT MOBLEY AND JUDY A. KING and his, her, their, and its successors and assigns, and each of their heirs, executors, administrators, and all other persons, firms, and corporations, of and from any and all claims, demands, rights, and causes of action, of whatsoever kind of nature arising from or by reason of any kind and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property, and the consequences thereof, resulting and to result, from a certain accident which happened on or about the TWENTY-THIRD day of MARCH, 1992, for which we have claim the said ALBERT MOBLEY and JUDY A. KING to be legally liable, which liability is expressly denied.
In addition, the release agreement contained typed-in, capital letters that read "THIS RELEASE IS FOR PAIN AND SUFFERING ONLY." The plain language of the release agreement, construing the typed-in words as superseding the original text, means that Gene and Patsy Colegrove released their claims against King and Mobley as to pain and suffering only.
The rights of an insurer are no greater than the rights of its insured. A release is an effective defense against later actions by an insurer pursuant to its right of subrogation. Bogan,supra, at 29-30. Gene breached the insurance contract with Michigan Millers by entering into a release agreement with King and Mobley, thereby extinguishing Michigan Millers' right to subrogation as to the claim for pain and suffering. However, the trial court found, and we agree, that Gene did not release any other claims he may have had against King by entering into the settlement agreement.[3] Therefore, Gene did not impair or destroy Michigan Millers' subrogation rights for those claims by entering into the settlement and signing the release.
 2. Patsy's Claim for Loss of Consortium
The Colegroves' policy with Michigan Millers provides underinsured motorist coverage in the amount of $50,000 per person and $100,000 per accident. Michigan Millers may be potentially liable to Patsy up to $50,000 pursuant to the Savoie decision. The question is: does Patsy's execution of a release of claims against King and Mobley for pain and suffering constitute a material breach of her insurance contract with Michigan Millers, relieving Michigan Millers of its duty to pay Patsy's potential loss of consortium claim? Using the same reasoning as we used above in deciding that Gene's partial release of King does not relieve Michigan Millers of its duty to pay, up to its policy limits, on Gene's unreleased claims, we find that Patsy's claim for loss of consortium was not released and Michigan Millers subrogation rights as to the loss of consortium claim were not destroyed by the settlement and release.
By its explicit terms, the release simply does not relate to the claim which Patsy asserts. Patsy has only a loss of consortium claim to assert, which she has not released. Therefore, Patsy still has a viable claim against King and Mobley for loss of consortium. Patsy did not breach the subrogation clause of her contract with Michigan Millers by her execution of the settlement agreement and release and thus impaired no rights of subrogation that Michigan Millers had with respect to her unreleased loss of consortium claim by virtue of the settlement.
 D. Conclusion
Because Gene did not release King from any claims other than his claim for pain and suffering, Michigan Millers is not relieved of its duty to pay on those unreleased claims on the basis that its subrogation rights as to those claims were destroyed.[4]
The Colegroves' second assignment of error is sustained in part.
Gene's claim against King for pain and suffering has been released and Michigan Millers' subrogation rights as to that claim have been destroyed, therefore, Michigan Millers is relieved of its duty to pay underinsurance motorists benefits on Gene's pain and suffering claim only. However, Michigan Millers is not relieved of its duty to pay, up to the policy limits, benefits for the unreleased claims of both Gene and Patsy. The Colegroves' first assignment of error is therefore sustained.
The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellees.
 Exceptions. _________________________________ WILLIAM R. BAIRD, FOR THE COURT
QUILLIN, P. J.
DICKINSON, J., CONCUR
[1] According to the testimony at trial, Michigan Millers paid $5,000 to the Colegroves for medical expenses and was subsequently reimbursed for this payment by Travelers. Travelers paid an additional $45,000 to the Colegroves in consideration for its release of King and Mobley. Travelers' position, therefore, is that its policy limits have been exhausted.
[2] However, in October 1994, the General Assembly amended R.C. 3937.18, explicitly indicating its intent to supersede the effect of the Supreme Court of Ohio's holding in Savoie,supra. R.C. 3937.18(A)(2) now reads:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist's coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
This court held in Heritage Mut. Ins. Co. v. McBee (Aug. 21, 1996), Summit App. No. 17440, unreported, at 4, that R.C. 3937.18, as amended in October 1994, cannot be applied retroactively. At the time of the accident on March 23, 1992, the Colegroves had no legal claim to any damages in excess of the liability limits of Mobley's and King's policy. During the pendency of the action, however, the law of Ohio changed and the Colegroves now have a claim for damages in excess of the limits of the Travelers policy. This claim is not affected by the recent amendment of R.C.3937.18.
[3] It is unclear, however, what unreleased claims Gene has against Michigan Millers. The evidence shows that Michigan Millers paid $5,000 pursuant to the "medical payments" coverage of the Colegroves' policy with Michigan Millers. The medical payments limit in the Colegroves' policy with Michigan Millers was $5,000. Travelers reimbursed Michigan Millers for this payment. Gene has destroyed Michigan Millers' subrogation rights for any pain and suffering cause of action he may have had against King and therefore Michigan Millers has no duty to pay a pain and suffering claim made by Gene. Apparently recognizing this unresolved issue, Michigan Millers stated in its brief:
 Assuming Mr. Colegrove can prove damages sufficient to entitle him to the full per person limit of his [underinsured motorist] coverage
with Michigan Millers, Michigan Millers will be unable to recover that money from the tortfeasor.
(Emphasis added.) As that issue is not before this court, we make no determination as to whether or not Gene has any viable claims to assert against Michigan Millers.
[4] In addition, Michigan Millers argues that the Gene Colegrove destroyed its subrogation rights as to any remaining claims he may have had against King due to the dismissal of the Colegroves' lawsuit against King and the failure to refile within the statutory period of two years. We find this argument unpersuasive for two reasons. First, Michigan Millers had actual notice of King's potential liability and did nothing to preserve Gene's rights against King or its own right of subrogation. "An insurer must aid its insured in the preservation of its subrogation rights." McDonald v.Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, paragraph one of the syllabus. Second, there is no evidence to support Michigan Millers' argument that the new lawsuit against King was filed outside the statute of limitations. The trial transcript supports the fact that a new lawsuit has been filed, but does not state when it was filed.