880 So.2d 1163 (2003)
Margaret D. WOLFE
v.
ALFA MUTUAL INSURANCE COMPANY.
Amanda Clark
v.
Alfa Mutual Insurance Company.
2020066 and 2020109.
Court of Civil Appeals of Alabama.
November 21, 2003.
*1164 Mark C. Wolfe and J. Knox Boteler III of Moore & Wolfe, P.C., Mobile, for appellants.
Thomas M. Galloway, Jr., of Galloway, Smith, Wettermark & Everest, LLP, Mobile, for appellee.
MURDOCK, Judge.
Margaret D. Wolfe appeals from a summary judgment entered by the Mobile Circuit Court against her and in favor of Alfa Mutual Insurance Company ("Alfa") on Wolfe's complaint against Alfa alleging breach of contract and seeking declaratory relief; Wolfe contended that Alfa had improperly required her to repay $2,866.90 in medical-payment benefits on the ground of subrogation, contrary to the contract of insurance she maintained with Alfa.
Amanda Clark appeals from a summary judgment entered by the Mobile Circuit Court against her and in favor of Alfa in Alfa's declaratory-judgment action seeking a declaration that, due to subrogation, Clark owed Alfa $2,000 in medical-payment benefits it had paid to Clark for medical bills she had incurred as a result of a motor-vehicle accident.
The two cases were consolidated at the trial-court level for purposes of discovery only. Because the issues raised on appeal and the appellee in both cases are identical, this court has consolidated the two cases, ex mero motu.

Wolfe's Case History
Wolfe was involved in a motor-vehicle accident on March 15, 2000, in which Inman Ellis drove his vehicle into the back of the vehicle in which Wolfe was the passenger and her husband was the driver. Wolfe suffered physical injuries from the accident and received treatment for those injuries from several doctors, completing her treatment at the end of July 2000. At that time, Wolfe submitted a claim seeking medical-payment benefits under her automobile insurance policy maintained by Alfa, and Alfa paid Wolfe $2,866.90 in medical-payment benefits. Wolfe also submitted a bodily injury claim to Ellis's liability insurance carrier, Liberty Mutual Insurance Company ("Liberty Mutual"). Wolfe settled with Liberty Mutual for the sum of $9,150. Wolfe did not feel that the settlement with Liberty Mutual fully compensated her for her injuries. During the pendency of her third-party liability claim, Wolfe used the medical-payment benefits that had been provided to her under the *1165 Alfa policy. Following the settlement with Liberty Mutual, Alfa threatened to file suit against Wolfe to obtain reimbursement for the medical-payment benefits spent by Wolfe; on April 24, 2001, Wolfe paid Alfa $2,866.90 for its claimed subrogation interest.
On May 8, 2001, Wolfe filed a complaint in the Mobile Circuit Court seeking declaratory relief and alleging a breach-of-contract claim against Alfa. Specifically, Wolfe asserted that Alfa should have applied the made-whole doctrine and the common-fund doctrine to its medical-payments subrogation claim. Wolfe asserted that Alfa's failure to apply those doctrines constituted a breach of the insurance contract between Wolfe and Alfa. On June 12, 2002, Wolfe filed a motion for a summary judgment and documents in support of the motion. Alfa filed its response to Wolfe's motion and a countermotion for a summary judgment on August 13, 2002. The trial court denied Wolfe's motion for a summary judgment on August 21, 2002; it entered an order on September 16, 2002, granting Alfa's motion for a summary judgment. Wolfe appeals.

Clark's Case History
Clark was involved in a motor-vehicle accident on April 24, 2000, in which Ellen Geary drove her vehicle into the back of Clark's vehicle. Clark suffered physical injuries from the accident and received treatment for those injuries from several doctors, completing her treatment in August 2000. At that time, Clark submitted claims for medical-payment benefits under her automobile insurance policy maintained by Alfa, and Alfa paid Clark $2,000 in medical-payment benefits. Clark also submitted a bodily injury claim to Geary's liability insurance carrier, USAA. Clark settled with USAA for the sum of $8,871. Clark did not feel that the settlement with USAA fully compensated her for her injuries. Alfa notified USAA of its subrogation claim for the medical-payment benefits it had paid to Clark, and USAA made $2,000 of the settlement proceeds payable to Clark and Alfa. Therefore, Clark actually received $6,871 of the negotiated settlement proceeds.
On January 26, 2001, Alfa filed a declaratory-judgment action in the Mobile Circuit Court seeking a declaration that Clark owed Alfa the $2,000 in medical-payment benefits it had paid to Clark because of its subrogation claim based on the insurance contract between Clark and Alfa. On February 21, 2001, Clark filed an answer and asserted two counterclaims against Alfa. First, Clark sought a declaration that the Alfa policy in question failed to exclude the applicability of the made-whole doctrine and that, therefore, the doctrine should apply to Alfa's claimed right to subrogation. Second, Clark asserted a breach-of-contract claim against Alfa alleging that, because the policy in question failed to specifically exclude the made-whole doctrine and the common-fund doctrine, the policy was ambiguous as to those issues and, therefore, that Alfa had breached the contract by asserting its subrogation interest against Clark's settlement recovery. Alfa filed a motion for a summary judgment on May 22, 2002; Clark filed a response in opposition to Alfa's motion for a summary judgment and her own countermotion for a summary judgment on June 17, 2002. The trial court entered an order on July 16, 2002, granting Alfa's motion for a summary judgment, concluding that Alfa was entitled to be reimbursed by Clark from her settlement with USAA for the $2,000 in medical-payment benefits Alfa had paid to Clark. Clark appeals.

Discussion
Both cases on appeal present two issues for our review. The first issue is whether the so-called "made-whole doctrine" *1166 applies to Alfa's right to reimbursement under the insurance policies Alfa provided to Clark and Wolfe.
"Subrogation is an equitable doctrine intended to prevent the insured from recovering twice for a single injury and to reimburse the insurer for payments it made that should, in fairness, be borne by another. When the insured recovers the full amount of his damages from a third-party tort-feasor, the insurer is entitled to reimbursement of payments made on the policy. However, courts have generally held that no right of subrogation exists until the insured has recovered an amount in excess of his or her loss."
International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 164 (Ala.1989) (citations omitted). The made-whole doctrine is "the general rule that a subrogee is not entitled to recover, absent full recovery by the insured (i.e., unless the damages recovered plus the insurance proceeds exceed the insured's loss)...." Liao, 548 So.2d at 165. Both Clark and Wolfe contend that the settlements they entered into with the insurance carriers of the tortfeasors in their respective cases did not make them whole and that, therefore, under the madewhole doctrine, Alfa is not entitled to reimbursement of the medical-payment benefits it provided to the insureds.
The subrogation language of the insurance policies at issue in these cases is identical and provides:
"If [Alfa] make[s] a payment under Parts B, C-2, D, E, F and G of this policy[1] and the person to or for whom payment was made has a right to recover damages from another, [Alfa] shall be subrogated to that right. That person shall do whatever is necessary to enable [Alfa] to exercise [its] rights and shall do nothing after loss or bodily injury to prejudice them.
"If [Alfa] make[s] a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for [Alfa] the proceeds of the recovery and shall reimburse [Alfa] to the extent of [its] payment, costs and fees."
Alfa contends that the made-whole doctrine does not apply in these cases because, it argues, the insurance policies modified the general rule that an insurer has no right of subrogation "until the insured has recovered an amount in excess of his or her loss." Liao, 548 So.2d at 164.
In Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772 (Ala.1990), our Supreme Court held that the made-whole doctrine applied in all cases where the insurer has paid claims of its insured. However, the Court overruled Powell in Ex parte State Farm Fire & Casualty Co., 764 So.2d 543 (Ala.2000), electing to return to the rule as stated in Liao. In Liao, the Court stated that "the better reasoned rule, one followed in a number of jurisdictions, is that equitable principles apply to all instances of subrogation except when the contract expressly provides otherwise." 548 So.2d at 165 (emphasis added). In other words, the made-whole doctrine will apply in all subrogation cases unless the contract "expressly provides" that it does not apply. See, e.g., Allstate Ins. Co. v. Hugh Cole Builder, Inc., 772 So.2d 1145, 1146-47 (Ala.2000). Alfa contends that the above-quoted language of the insurance policies in question expressly modifies the established equitable principles of subrogation such that the made-whole doctrine is not applicable to Clark's and Wolfe's cases.
*1167 Exactly what our Supreme Court meant when it stated in Liao that a contract must "expressly provide" that the made-whole doctrine will not apply has not been addressed previously by the courts in Alabama. Clark and Wolfe contend that Liao means that a contract must specifically and explicitly state that the made-whole doctrine does not apply. Alfa contends that a contract can expressly change the established equitable scheme without using "magic words" specifically disclaiming the made-whole doctrine. Language in Liao itself indicates that Alfa is correct. Elsewhere in Liao the Court stated that the insurance contract must "contain specific provisions regarding [the insurer's] subrogation rights that [are] contrary to established equitable principles." 548 So.2d at 166 (emphasis added). Obviously, a provision can espouse a scheme "contrary to established equitable principles" without mentioning the made-whole doctrine explicitly.
Therefore, our starting point in ascertaining whether Alfa has "expressly provide[d]" that the insured must reimburse Alfa even if the insured has not been made whole is the language of the contracts themselves. The first of the two paragraphs at issue in the insurance contracts states that if Alfa makes a payment to its insured, and if that insured "has a right to recover damages from another, [Alfa] shall be subrogated to that right." It seems clear that this paragraph simply states the fact that Alfa holds a general right of subrogation when the insured has a right to recover damages from a third party. Cases from other jurisdictions have also considered such language to be "general" subrogation language, not sufficient to modify the applicability of the made-whole doctrine. See, e.g., Lyon v. Hartford Acc. & Indem. Co., 25 Utah 2d 311, 480 P.2d 739 (1971), overruled on other grounds by Beck v. Farmers Ins. Exch., 701 P.2d 795 (Utah 1985); and Sapiano v. Williamsburg Nat'l Ins. Co., 28 Cal.App.4th 533, 535-36, 33 Cal.Rptr.2d 659, 660 (1994).
The second paragraph at issue, on the other hand, seems to state something different than the established equitable principle of subrogation. It states that "[i]f [Alfa] make[s] a payment under this policy and [the insured] recovers damages from another, [the insured] shall hold in trust for [Alfa] the proceeds of the recovery and shall reimburse [Alfa] to the extent of [Alfa's] payment, costs and fees." This sentence consists of two principal clauses. The first lays a predicate, describing the condition which, if present, will trigger the insured's obligation under the second clause. The latter part of the first clause conditions the insured's obligation to reimburse Alfa simply on whether the insured "recovers damages." The damages referenced are not limited to those that may correspond to what Alfa has already paid (e.g., medical expenses) or that otherwise compensate the insured in a manner or to a degree not accomplished by Alfa's payment. Likewise, the second clause of the sentence requires the insured to hold in trust "the proceeds" of the recovery from the third partynot part of the proceeds and not only those proceeds that correspond to the same losses (e.g., medical expenses) for which payments were specifically made by Alfai.e., the entire proceeds. Neither clause contains any qualification of the insurer's rights or the insured's obligation based on whether the insured has been made whole. The parties could have included such a qualification, but, instead, the only qualification that is included in this provision is that the reimbursement is to be made "to the extent of [Alfa's] payment, costs and fees." We must conclude, therefore, that the trial court did not err *1168 in holding that this provision requires the insured to reimburse Alfa without regard to whether the insured has been made whole.
Other jurisdictions agree that language essentially identical to the language in the second paragraph at issue in these insurance contracts specifically abrogates the made-whole doctrine. In Westfield Insurance Co. v. Rowe ex rel. Estate of Gallant, 631 N.W.2d 175 (S.D.2001), the insurance contract's subrogation provisions provided:
"`If we make a payment under this policy and:
"`a. The person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right....
"`b. The person to or for whom payment is made recovers damages from another, that person shall: (1) hold in trust for us the proceeds of the recovery and (2) reimburse us to the extent of our payment.'"
631 N.W.2d at 180 (emphasis added). The South Dakota Supreme Court held that such language overrode any application of the made-whole doctrine. Similarly, in Risner v. Erie Insurance Co., 91 Ohio App.3d 695, 633 N.E.2d 588 (1993), the language in the insurance contract stated:
"`To the extent of payment under this policy, we will have the right to recover from anyone else held legally responsible. Anyone we protect will sign papers and do whatever is required to transfer this right to us and do nothing to harm this right. Anyone receiving the benefit of a payment under this policy will hold in trust for us the proceeds of any recovery of damages from another, and reimburse us to the extent of our payment.'"
91 Ohio App.3d at 700, 633 N.E.2d at 591 (first emphasis added; second emphasis original; some emphasis omitted). The Ohio Court of Appeals held that
"[t]his language is specific and unequivocal. It requires reimbursement, to the extent of any payment by [the insurer], from the proceeds of any recovery from a third person. In other words, it grants to [the insurer] the unqualified right of subrogation to the entire amount paid to [the insured] under their contract of insurance."
Id. Consequently, the Ohio Court of Appeals ruled that the contract expressly overrode the made-whole doctrine.
We acknowledge that other jurisdictions have reached the opposite conclusion when considering language in an insurance contract that is nearly identical to the language at issue in this case, finding such language to be inadequate to disclaim the made-whole doctrine. See, e.g., Wine v. Globe American Cas. Co., 917 S.W.2d 558, 564 (Ky.1996); Continental Western Ins. Co. v. Swartzendruber, 253 Neb. 365, 371, 570 N.W.2d 708, 712 (1997). However, we believe the better reasoned conclusion to be the one reached in Westfield Ins. Co. and Risner. Applying the plain and literal meaning of the words employed, see IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992), the language in question espouses a scheme contrary to the made-whole doctrine. Liao, 548 So.2d at 166. To rule otherwise would be to disregard the written agreement of the parties. See, e.g., Martin v. Dillow, 93 Ohio App.3d 108, 110, 637 N.E.2d 961, 962 (1994) (stating, in another case involving nearly identical contract language: "[T]he case at bar presents no reason to apply equitable principles because the relationship between the parties was established and defined by contract. While it may not seem fair that the insured cannot apply insurance money to her total accident-related losses, `[c]ases of contractual interpretation should not be *1169 decided on the basis of what is "just" or equitable.'" (quoting Ervin v. Garner, 25 Ohio St.2d 231, 239, 267 N.E.2d 769, 774 (1971))); Capitol Indem. Corp. v. Strike Zone, 269 Ill.App.3d 594, 596, 646 N.E.2d 310, 312, 206 Ill.Dec. 943, 945 (1995) (noting that "[t]he parties here were free to negotiate the terms of the contract of insurance, including the subrogation provision with its consequent effect.... We decline to upset the settled expectations of the parties as reflected in the policy of insurance by overlaying inapplicable equitable principles which contravene the contract terms and forge a new agreement between the parties"). As one respected treatise on insurance law has stated:
"[U]nlike the rule when subrogation is claimed on an equity basis, where ... the terms of the insured's ... insurance policy ... [are] clear and unambiguous in requiring the insured to hold in trust for the insurer proceeds of any recovery obtained by the insured against a third-party wrongdoer and to reimburse the insurer to the extent of its payment to the insured, the contract language giving the insurer a right of subrogation ha[s] to be enforced even though the insured's loss, including his or her costs of collection, exceed[ ] the combined benefits of his or her tort award and insurance benefit...."
16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 223:147 (3d ed.2003) (citing Martin v. Dillow, supra).
On the basis of the foregoing analysis and authorities, we conclude that the language in the insurance policies at issue was sufficient to change the established equitable principles of subrogation and that the summary judgments are due to be affirmed as to this issue.
Both Clark and Wolfe argue secondly that the trial courts erred in failing to apply the so-called "common-fund doctrine" to Alfa's claimed right of subrogation. In Liao, our Supreme Court explained the concept and purpose of the common-fund doctrine as follows:
"The general rule in Alabama is that attorney fees can be awarded only when `authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney created a fund out of which fees may be paid.' Shelby County Commission v. Smith, 372 So.2d 1092 (Ala.1979). This equitable type of attorney fee has been allowed in cases involving what this Court has categorized as a `common fund.' In Kimbrough v. Dickinson, 251 Ala. 677, 684, 39 So.2d 241 (1949), this Court discussed the theory behind `the common fund doctrine' as follows:
"`The rule[] rests upon the ground that where one litigant has borne the burden of expense of the litigation that has inured to the benefit of others as well as himself, those who have shared in the benefits should contribute to the expense.'"
548 So.2d at 166.
"The common-fund doctrine in insurance-subrogation cases is based on the equitable notion that, because an insurer is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recoveryincluding a pro rata share of the insured's attorney fee."
Government Employees Ins. Co. v. Capulli, 859 So.2d 1115, 1119 (Ala.Civ.App.2002).
In Capulli, this court observed that in every case in which it had applied the common-fund doctrine to insurance-subrogation cases, the court "held that the insurer-subrogee was obligated to pay a pro *1170 rata share of its insured's attorney fee because the efforts of the insured's attorney had created a fund from which the insurer directly benefitted." Capulli, 859 So.2d at 1120. Alfa concedes in its brief in Clark's appeal that it will owe an attorney fee to Clark's attorney if Clark pays the $2,000 to Alfa because of her attorney's efforts in obtaining the settlement from which Alfa will benefit. It is clear that an attorney fee is also owed by Alfa to Wolfe's attorney. Accordingly, we reverse the summary judgments in favor of Alfa and against Clark and Wolfe insofar as those judgments fail to reduce Alfa's recovery by an amount equal to Alfa's pro rata share of the attorney fees incurred by Clark and Wolfe in achieving the third-party recoveries at issue. The cases are remanded for the trial courts to issue new judgments consistent with this opinion.
2020066AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
2020109AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., concurs in the result, with writing.
YATES, Presiding Judge, concurring in the result.
I agree with the result reached by the majority that the subrogation provision in the insurance contracts between the insureds and Alfa abrogates the made-whole doctrine, permitting Alfa to be subrogated for claims it paid to its insureds even though the insureds have not been fully compensated for their personal injuries. However, I do not believe, as the majority does, that the parties were free to negotiate the subrogation provision with its consequent effect. As the Eighth Circuit Court of Appeals stated in American Service Mutual Insurance Co. v. Bottum, 371 F.2d 6, 12 (8th Cir.1967), "Insurance contracts are prime examples of `contracts of adhesion' where the customer is required to `adhere' to the standard contract form. Insurers, due to their greater bargaining position, should not be allowed to use this as a wholesale method for controlling applicable law."
I also agree with the application of the common-fund doctrine in the present case requiring Alfa to pay its share of the attorney fees incurred by the insureds in achieving an award from the tortfeasors. In this instance, the common-fund doctrine will lessen the harsh effects of subrogation where the insured has incurred the expense of counsel and court costs but has not been fully compensated for his or her personal injury.
NOTES
[1] Part B of the policy provides for medicalpayment benefits.