Appellant, Mary A. Gerak, appeals the decision of the Summit County Court of Common Pleas. We affirm.
 I.
Ms. Gerak was injured in an automobile accident caused by appellee, Lisa M. Dentice. Subsequently, Ms. Gerak filed a complaint on September 25, 1996, seeking to recover damages arising from Ms. Dentice's negligence. A jury trial was held on April 2, 1998, and in a judgment entry journalized on April 8, 1998, the jury found Ms. Dentice liable and awarded Ms. Gerak $30,000 in damages. Ms. Gerak appealed, and on May 26, 1999, we affirmed the judgment of the Summit County Court of Common Pleas.Gerak v. Dentice (May 26, 1999), Summit App. No. 19098, unreported.
On May 6, 1998, Ms. Dentice filed a motion for a post-judgment credit or set-off, claiming that her insurance carrier, State Farm Mutual Automobile Insurance Company ("State Farm"), had already paid Ms. Gerak $15,073.65[1] before the judgment was rendered.[2] Both Ms. Dentice and Ms. Gerak's mother (Nancy Gerak) had insurance policies with State Farm. State Farm advanced Ms. Gerak $6,161.68 under Ms. Dentice's policy and paid Ms. Gerak $9,700.24 for her medical expenses under her mother's policy. In a judgment order dated August 11, 1998, the trial court delayed ruling on the motion for a set-off until the judgment was affirmed on appeal. After the judgment was affirmed, in a judgment order journalized on August 13, 1999, the trial court granted Ms. Dentice's motion, finding that $15,073.65 had been advanced to Ms. Gerak and should be credited against the judgment of $30,000. This appeal followed.
 II.
Ms. Gerak asserts five assignments of error. We will address each in due course, consolidating appellant's first and second assignments of error and her third and fourth assignments of error to facilitate review.
A. First Assignment of Error
 The trial court erred in granting a set-off or post-judgment credit to the Appellee for any medical payments made under the Appellant's mother's insurance policy with State Farm Insurance Company.
Second Assignment of Error
 The trial court erred in granting a set-off or post-judgment credit since the Appellant had no duty of subrogation or reimbursement to State Farm Insurance Company since the Appellant and State Farm had no contractual relationship.
 In her first assignment of error, Ms. Gerak asserts that appellee had no right to seek a set-off for the money paid from Ms. Gerak's mother's insurance policy. Further, in her second assignment of error, Ms. Gerak argues that she was not a party to the insurance agreement between her mother and State Farm; thus, she contends that she never consented to the reimbursement or subrogation provisions of the insurance policy, and therefore, the reimbursement and subrogation provisions do not apply to her. We disagree.
"A third party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract." Chitlik v. Allstate Ins. Co. (1973), 34 Ohio App.2d 193,196. "The third party need not be named in the contract, as long as [she] is contemplated by the parties to the contract and sufficiently identified." Id. Moreover, the "promisee must intend that a third party benefit from the contract in order for that third party to have enforceable rights under the contract[.]"Laverick v. Children's Hosp. Med. Ctr. of Akron (1988), 43 Ohio App.3d 201,204. A third party beneficiary is free to accept or reject the benefits of the contract; however, by accepting the benefits of the contract, the third party beneficiary also assumes the attendant burdens. Fawn v. Heritage Mut. Ins. Co. (June 30, 1997), Franklin App. No. 96APE12-1678, unreported, 1997 WL 359322, at *1 (holding that the "arbitration provision of an insurance policy between a named insured and insurer can be enforced against a third-party who seeks underinsurance benefits under the policy").[3]
In the present case, we find that Ms. Gerak was a third party beneficiary of her mother's insurance policy with State Farm. Under the medical payments provision of the State Farm insurance policy, State Farm "will pay medical expenses for bodily injury
sustained by [the named insured, his or her spouse, and their relatives]. These persons have to sustain the bodily injury * * * while they operate or occupy a vehicle covered under the liability section[.]" (Emphasis original.) Ms. Gerak's mother, Nancy Gerak, was the policyholder of the State Farm policy. Here, Nancy Gerak's insurance policy covered the automobile that Ms. Gerak was driving when the accident occurred.[4] By including relatives that were driving a covered vehicle in her policy, Nancy Gerak sufficiently identified and contemplated medical payments coverage for her daughter. Thus, we conclude that Ms. Gerak was a third party beneficiary of her mother's insurance policy with State Farm. Furthermore, by accepting the approximately $9,000 benefit from State Farm under her mother's insurance policy, Ms. Gerak also accepted the burdens. See Fawn, supra.
Now, we turn to discuss whether Ms. Gerak must reimburse State Farm for its payment of her medical expenses. This court, in Craven v. Nationwide Mutual Insurance Company (Mar. 11, 1998), Summit App. No. 18490, unreported, has previously addressed the issue of whether an insurance company, which insures both the injured party and the tortfeasor, may offset the medical payments made under the injured party's insurance contract against the amount the injured party receives in a judgment against the tortfeasor. In Craven, Nationwide Mutual Insurance Company ("Nationwide") insured both the plaintiff (Marlene Craven) and the tortfeasor (James Cummings). Id. at 1. Ms. Craven filed a claim with Nationwide for $6,567.09 in accident-related medical bills pursuant to the medical payments provision of her insurance policy.Id. at 2. However, Nationwide refused to pay Ms. Craven's medical payment claim, and instead offered to pay her $15,000 to settle both Ms. Craven's medical payment claim under her insurance policy with Nationwide and her personal injury claim against Mr. Cummings. Id. Ms. Craven refused and the personal injury claim went to arbitration; Ms. Craven was awarded $15,000 and did not appeal this decision. Id. at 2-3.
Subsequently, Ms. Craven filed suit against Nationwide seeking declaratory relief and specific performance, requiring Nationwide to pay her accident-related medical bills under her policy. Id. at 3. Nationwide moved for summary judgment claiming that the subrogation clause in Ms. Craven's policy entitled Nationwide to reimbursement for any medical expenses it paid to her. Id. The trial court granted summary judgment in favor of Nationwide. Id. at 4. In affirming the trial court, this court distinguished between subrogation and reimbursement, finding that Nationwide was seeking reimbursement and not subrogation, as Nationwide was not intending "to substitute itself for Craven or otherwise attempt to recover any portion of Craven's losses directly from Cummings. Instead, Nationwide [was] merely seek[ing] to be reimbursed by Craven from the proceeds that Craven ha[d] already received from the personal injury award. This [did] not require Nationwide to pursue a claim against Cummings and thereby sue itself." Id. at 8. Consequently, we found that Ms. Craven was "not entitled to double recovery of her medical expenses" and affirmed the trial court's decision granting summary judgment to Nationwide with respect to the offsetting and reimbursement issues. Id. at 10.
Similarly, in the case at bar, we find that the trial court did not err by allowing appellee to offset the amount of medical payments that State Farm paid to Ms. Gerak under the medical payments provision of the insurance policy from her recovery in the personal injury suit. As previously noted, Ms. Gerak is a third party beneficiary under her mother's insurance contract, and thus, by accepting the benefits of her mother's insurance contract, she also accepted the legal obligations or burdens as well. The terms of the insurance policy specifically provide for reimbursement. The insurance policy states that "if the person to or for whom we make payment recovers from any party liable for thebodily injury, that person shall hold in trust for us the proceeds of the recovery, and reimburse [State Farm] to the extent of our payment."[5] Thus, we find that Ms. Gerak has a duty to reimburse State Farm for the medical payments it made to her under the medical payments provision of the insurance policy. Furthermore, State Farm will not be in the position of suing itself, as State Farm does not intend to substitute itself for Ms. Gerak and recover a portion of the losses directly from Ms. Dentice, to whom State Farm owes a duty to indemnify. See Craven,supra, at 8. Therefore, we conclude that limited to the narrow facts of this case, the trial court did not err by permitting State Farm to offset the approximately $9,000 in medical payments that it paid to Ms. Gerak under the medical payments provision of the insurance policy from the $30,000 judgment which she received from her personal injury suit against Ms. Dentice. Appellant's first and second assignments of error are overruled.
B. Third Assignment of Error
 The trial court erred in granting a set-off or post-judgment credit where the subrogation/reimbursement clauses under which medical payments to be recovered from the Appellee-tortfeasor are void as against public policy.
Fourth Assignment of Error
 The trial court violated the equal protection guarantees when it treats [sic] the Appellant differently with respect to medical payments subrogation and/or reimbursement under different policies.
 In her third assignment of error, Ms. Gerak avers that the trial court erred in granting a set-off, as the reimbursement and subrogation clauses of Ms. Gerak's mother's insurance policy are void as against public policy. In her fourth assignment of error, appellant further contends that by permitting a set-off in the present case, the trial court violated her right to equal protection under the law, as a set-off for the medical payments would be prohibited if appellee had been an uninsured or underinsured motorist. We disagree.
To support her contention that the insurance provision is void as against public policy, Ms. Gerak cites a myriad of cases, which hold in part that an insurance policy subrogation clause, which allows medical payments to be offset against uninsured or underinsured motorist coverage (U.M./U.I.M.) is void as against public policy. See, e.g., Grange Mut. Cas. Co. v. Lindsey (1986),22 Ohio St.3d 153. However, in the present case, State Farm is not seeking to offset the medical payments it made to Ms. Gerak against U.M./U.I.M. insurance coverage, but rather is seeking to enforce the provisions in the policy. The evidence shows that Ms. Gerak received only medical payments under the policy and not U.M./U.I.M., as Ms. Dentice was fully insured against the judgment rendered. Rather, State Farm is seeking to offset the medical payments it advanced to Ms. Gerak from the $30,000 judgment rendered in the trial court, pursuant to the reimbursement/subrogation provisions in the insurance policy. Hence, we decline to hold that the reimbursement/subrogation provision in appellant's mother's insurance contract with State Farm is void as against public policy, as "[a]greements voluntarily and fairly made between competent persons are usually valid and enforceable[.]" Gugle v. Loeser (1944), 143 Ohio St. 362, paragraph one of the syllabus.
Similarly, we find Ms. Gerak's equal protection argument unpersuasive. In determining whether an equal protection violation has occurred, the standard is essentially the same under state and federal law. Beagle v. Waldon (1997), 78 Ohio St.3d 59,63.
 The preliminary step in analyzing an equal protection challenge involves scrutiny of classifications created by the legislation. "[W]here there is no classification, there is no discrimination which would offend the Equal Protection Clauses of either the United States or Ohio Constitutions." Moreover, "[o]nly when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the impact of those classes."
 "`[W]henever the law operates alike on all persons and property, similarly situated, equal protection cannot be said to be denied.'"
 (Citations omitted.) Id. In the present case, Ms. Gerak does not base her equal protection argument on a specific state or federal law; therefore, we conclude that Ms. Gerak's equal protection argument must fail.[6] See Id. at 63. Accordingly, Ms. Gerak's third and fourth assignments of error are overruled.
C. Fifth Assignment of Error
 The trial court erred by not reducing the subrogation/reimbursement amount by the Appellant's attorney's fees and expenses.
 Ms. Gerak argues that the trial court erred by not reducing the subrogation/reimbursement amount by her attorney's fees and expenses. We disagree.
An insurance policy is essentially a contractual relationship between the insurer and the insured. Nationwide Mut. Ins. Co. v.Marsh (1984), 15 Ohio St.3d 107, 109. When the provisions of an insurance policy are clear and unambiguous, the language of the insurance policy controls. Longpre v. Midwest Optical Supply,Inc. (1990), 68 Ohio App.3d 198, 200. Moreover, there is no need to apply equitable principles when the relationship between the parties is clearly established and defined by the insurance policy. Martin v. Dillow (1994), 93 Ohio App.3d 108, 110; see, also, Ervin v. Garner (1971), 25 Ohio St.2d 231, 239-40.
In Martin, Ms. Martin was injured in an automobile accident and was paid $5,000 in medical payments pursuant to her insurance coverage with Cincinnati Insurance Company ("CIC"). Martin,93 Ohio App.3d at 109. Ms. Martin sued the tortfeasor and was awarded $20,000 by a jury. Id. Ms. Martin's insurance policy contained a subrogation/reimbursement provision (which is similar to Ms. Gerak's mother's policy in the case at bar). Id. After Ms. Martin refused to reimburse CIC, CIC moved the court to order reimbursement. Id. The trial court ruled against CIC, finding that Ms. Martin's "loss, including her costs of collection, exceeded the combined amounts of her tort award and insurance benefit." Id. On appeal, this court reversed, holding, in part, that the terms of the medical subrogation provision of the insurance policy were clear and unambiguous and conveyed to CIC the right to be reimbursed from Ms. Martin's recovery from the tortfeasor, "limited only by the amount of the benefits [the insurer] paid to Martin." (Emphasis added.) Id. at 110; see, also, Risner v. Erie Ins. Co. (1993), 91 Ohio App.3d 695,699-700.[7]
In the case at bar, the terms of the insurance policy are clear and unambiguous. They convey to State Farm the right to be reimbursed for any medical payments made to Ms. Gerak under the medical payments provision of the insurance policy from any recovery from the tortfeasor, limited only by the amount that State Farm actually paid out to Ms. Gerak in medical payments. Therefore, we conclude that the trial court did not err by refusing to reduce the reimbursement amount by Ms. Gerak's attorney's fees and expenses. Appellant's fifth assignment of error is overruled.
 III.
Appellant's assignments of error are hereby overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _____________________________________ WILLIAM G. BATCHELDER FOR THE COURT
BAIRD, J. and WHITMORE, J. CONCUR
[1] In Ms. Dentice's motion for post-judgment credit, she requested a set-off of $15,073.65; however, in her renewed motion filed on July 15, 1999, she requested a set-off of $15,861.92.
[2] The subrogation/reimbursement clause of Ms. Gerak's mother's policy reads:
3. Our Right to Recover Our Payments
* * *
b. Under medical payments coverage:
 (1) we are subrogated to the extent of our payments to the right of recovery the injured person has against any party liable for the bodily injury.
* * *
 (3) if the person to or for whom we make payment recovers from any party liable for the bodily injury, that person shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment.
(Emphasis original.)
[3] In Ohio, courts have held that an injured party is not a third party beneficiary to a tortfeasor's insurance contract. SeeChitlik v. Allstate Ins. Co. (1973), 34 Ohio App.2d 193. InChitlik, the appellant, who suffered personal injuries in an automobile accident, chose to bring an action directly against the tortfeasor's insurer, Allstate, claiming that appellant was a third party beneficiary of the tortfeasor's insurance contract.Id. at 195. The court rejected this argument and held that "in the absence of statute or special provision in the policy, a standard liability insurance policy is not a contract for the benefit of a third person. The contract is made with the intention of benefiting the insured, not someone whom he injures."Id. at 197. The court further held that "personal injury actions must first be brought by the injured party against the alleged tortfeasor. * * * The injured party may, of course, proceed against the insurer after obtaining judgment against the insured, under R.C. 3929.06." Id. at 197-98. The present case, however, is distinguishable in that the injured party (Ms. Gerak) is not trying to directly recover from the tortfeasor's insurer, as Ms. Gerak has already obtained a judgment against the tortfeasor; rather, Ms. Gerak is arguing that the reimbursement/subrogation provisions of her mother's insurance policy do not apply to her, as there was no mutual consent to the terms.
[4] In her affidavit dated August 12, 1999, Ms. Gerak states: "My mother is Nancy Dora Gerak, the policy holder of the State Farm Insurance Policy covering my automobile damaged in the July 2, 1995 collision with the Lisa Dentice automobile."
[5] The insurance policy contains both a reimbursement provision and a subrogation provision.
[6] R.C. 3937.18 requires insurance companies to offer uninsured and underinsured motorist coverage. In Beagle v. Waldon (1997),78 Ohio St.3d 59, 63, the Ohio Supreme Court held that R.C.3937.18(A)(2) did not violate the Equal Protection Clause of the Ohio Constitution, as "[t]he only classifications of insureds treated differently under R.C. 3937.18(A)(2) are those who, by contract, have chosen different policy limits."
[7] In Risner v. Erie Ins. Co. (1993), 91 Ohio App.3d 695, 697, Ms. Risner was advanced approximately $12,000 in medical payments pursuant to her insurance policy with Erie Insurance Company ("Erie"). Her insurance policy with Erie contained a reimbursement/subrogation provision, which had similar language to that of Ms. Gerak's State Farm policy. Id. at 700. Ms. Risner refused to reimburse Erie from her settlement proceeds against the tortfeasor for the full $12,000, claiming that she was entitled to retain a portion of the $12,000 as reimbursement for her attorney fees and litigation expenses paid by her in securing the settlement. Id. at 697. The trial court granted summary judgment in favor of Ms. Risner finding that she had not been fully compensated for her injuries and thus was entitled to keep the entire $12,000. Id. In reversing the trial court, the appellate court held in part that the clear and unambiguous language of the subrogation agreement controlled and "grant[ed] Erie the unqualified right of subrogation to the entire amount paid to Risner under their contract of insurance." Id. at 700.