MEHL et al., Appellees and Cross–Appellants,

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Appellant and Cross–Appellee.

[Cite as *Mehl v. Motorists Mut. Ins. Co.* (1992), 79 Ohio App.3d 550.]

Court of Appeals of Ohio,
Summit County.

No. 15276.

Decided May 13, 1992.

*Michael A. Saltzer,* for appellees and cross-appellants.

*Kurt R. Weitendorf,* for appellant and cross-appellee.

BAIRD, Presiding Judge.

This cause comes before the court upon the appeal of Motorists Mutual Insurance Company ("Motorists") from the order of the Summit County Court of Common Pleas granting summary judgment to Carolyn Mehl on her claim for payment of medical expenses. The trial court denied Mehl's claim for punitive damages based on Motorists' "bad faith" refusal to settle her claim, and Mehl cross-appeals.

On February 17, 1988, Carolyn Mehl sustained injuries in an automobile collision and promptly notified Motorists, her insurance carrier, of the accident. On May 1, 1990, pursuant to the terms of her policy, Mehl submitted a claim for medical payments in the amount of $5,193.05. On May 23, 1990, Motorists denied her medical payment claim based upon her violation of the subrogation provisions in her policy.

In August 1990, Mehl filed suit for breach of contract and bad faith. Both Mehl and Motorists moved for summary judgment. On July 10, 1991, the trial court granted Mehl's motion for summary judgment with regard to breach of contract but denied her claim for punitive damages based upon bad faith refusal to settle a claim. Motorists appeals the grant of summary judgment and asserts one assignment of error. Mehl cross-appeals denial of her right to a jury trial on the issue of bad faith and asserts a single cross-assignment of error.

### Assignment of Error

"The trial court erred in granting the motion for summary judgment of plaintiffs-appellees, Carolyn and Donald Mehl, and in denying the motion for summary judgment of defendant-appellant, Motorists Mutual Insurance Company."

Motorists argues that Mehl violated the subrogation provisions of her policy by failing to file a lawsuit against the negligent third-party tortfeasor in time to avoid a statute of limitations bar to any action. Mehl counters that her policy provided for payment of reasonable medical expenses incurred within three years of the accident and did not condition payment on her filing a law suit within two years. The particular policy provisions in question provide:

"PART B.—MEDICAL PAYMENTS COVERAGE

"INSURING AGREEMENT   We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:

"1.   Caused by accident; and

"2.   Sustained by a covered person.

"We will pay only those expenses incurred within 3 years from the date of the accident.

"* * *

"PART F.—GENERAL PROVISIONS

"OUR RIGHT TO RECOVER PAYMENT   A.   If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

"1.   Whatever is necessary to enable us to exercise our rights; and

"2.   Nothing after loss to prejudice them."

The parties' dispute centers on construction of these provisions.   Mehl argues that the provisions in the contract are ambiguous, and that, therefore, the specific medical payment provisions must be enforced over the general subrogation provisions, and the overall contract interpreted in favor of the insured.   Motorists asserts that the contract is clear and unambiguous, and that its provisions are not in conflict.

■■■   Established in common law and strengthened by statutory provisions, subrogation clauses are valid and enforceable.   *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 29, 521 N.E.2d 447, 454, modified in part in *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456.   Generally, subrogation provisions require the insurer's advance written consent before the insured settles with the tortfeasor's insurance carrier and releases the carrier from all liability.   *Id.,* 36 Ohio St.3d at 30, 543 N.E.2d at 455.   Settlement and execution of a release clearly prejudice an insurer's subrogation rights, and thus are prohibited by item two of general provision "A" which requires that the insured do "nothing after loss to prejudice [the insurer]."

■■■   Item one in the same provision is less clear.   Item one requires that the insured do "whatever is necessary" to enable the insurer to exercise its subrogation rights.   Item one is silent as to what precisely the insured must do.   Motorists faulted Mehl for inaction, yet Motorists did not condition payment of medical expenses on filing a lawsuit or any other specific action. Motorists reproached Mehl for failure to act within the statute of limitations, yet, generally, policy holders would not know that an action for bodily injury must be commenced within two years.   *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 64, 543 N.E.2d 488, 489.   Interpretation of statutes of limitations can be difficult, and "[t]o resolve these questions, the laymen needs an attorney."   *Id.*   "It is not desirable to force a policyholder to retain counsel in order to avoid statute of limitations problems."   *Id.* at fn. 2.   In order to be

given effect as reducing the time for suit provided by a statute of limitations, such a clause must be written in terms that are clear and unambiguous. *Id.* Because the limitation clause at issue is unclear and ambiguous, we find it unenforceable.

■ When language in an insurance contract is "reasonably susceptible of more than one meaning, [it] will be construed liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844, syllabus. Alternatively, the plain meaning of unambiguous language will be enforced as written. *Rhoades v. Equitable Life Assur. Soc. of U.S.* (1978), 54 Ohio St.2d 45, 47, 8 O.O.3d 39, 40, 374 N.E.2d 643, 644.

■ Our review of the record indicates that Mehl's insurance policy unambiguously provided that Motorists would pay reasonable medical expenses incurred within three years from the date of the accident. Further, Mehl did nothing to prejudice Motorists' subrogation rights, such as signing a release. Finally, nothing in the policy required an insured to file a lawsuit against the tortfeasor prior to payment of medical expenses. In reviewing a summary judgment, both the trial and appellate courts adopt the same standard. Both courts construe the evidence most strongly in favor of the nonmoving party. *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201–202, 24 OBR 426, 428–429, 494 N.E.2d 1101, 1103–1104. Pursuant to Civ.R. 56(C), a reviewing court will affirm the trial court's grant of summary judgment if it finds that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Our review of the record supports the trial court's grant of summary judgment. We overrule Motorists' assignment of error.

### Cross–Assignment of Error

"The trial court erred in granting appellant's motion for summary judgment on the issue of bad faith because appellant's conduct concerning the handling of cross-appellants' claim presented genuine issues of material fact upon which reasonable minds could differ as to the issue of bad faith."

Mehl charges that the trial court denied her the right to a jury trial on her claim for punitive damages based on Motorists' "bad faith" refusal to settle her claim. Twenty-seven months after the accident, and well within the allowable thirty-six months, Mehl submitted medical expenses she incurred because of the accident. Motorists denied her claim. Mehl argues that Motorists disallowed a valid claim and refused to reasonably interpret the medical payment provision in her policy.

"[A]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus. Nonetheless, "[m]ere refusal to pay insurance is not, in itself, conclusive of bad faith." *Id.* at 277, 6 OBR at 341, 452 N.E.2d at 1320. In order to recover punitive damages, Mehl must introduce "proof of actual malice, fraud or insult on the part of the insurer." *Id.* at paragraph two of the syllabus.

The evidence does not support Mehl's bad faith claim. Showing that Motorists exercised poor judgment is not proof of a deliberate wrongdoing with the actual intent to mislead, deceive or breach a duty. We overrule Mehl's cross-assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

QUILLIN, P.J., and CACIOPPO, J., concur.