Plaintiff-appellant Keith Wilson appeals from a summary judgment rendered against him and in favor of defendant-appellee Progressive Casualty Insurance Company with respect to his claim for uninsured motorist coverage. Wilson argues that the trial court erred by rendering summary judgment against him on the ground that he had breached his duty to protect Progressive's subrogation rights by not filing a lawsuit against the unidentified driver who had caused the accident in which he was injured before the two-year statute of limitations for filing suits for bodily injury had run, where there was no express language in his insurance policy with Progressive requiring him to do so in order to maintain an uninsured motorist claim.
We conclude that the trial court did not err by awarding Progressive summary judgment on the ground that Wilson breached his duty to protect Progressive's subrogation rights. Although Wilson did not necessarily have to file an action against the unidentified motorist before the statute of limitations expired in order to fulfill that duty, he was required at least to notify Progressive in a timely manner of his alternative theory that an unidentified motorist had caused the accident and of his intention to make an uninsured/underinsured motorist claim, so that Progressive could take action to ensure that a suit would brought against the unidentified tortfeasor. By failing to do so, he breached his duty to protect Progressive's subrogation rights. Accordingly, the judgment of the trial court will be
Affirmed.
 I
On August 20, 1997, Keith Wilson was injured in a motor vehicle accident on Salem Avenue in Dayton Ohio. On September 3, 1998, Wilson filed a complaint, alleging that Sharon Wilson, who is not related to him, was the driver of the other vehicle involved in the accident; that Ms. Wilson was negligent in operating her motor vehicle; and that as a result of her negligence, he sustained personal injuries and property damages in the amount of $50,000. Wilson's wife, Marny, also brought a loss of consortium claim against Ms. Wilson, alleging damages of $25,000.
On February 23, 1999, Wilson filed an amended complaint, this time alleging that Lawrence Broady had actually been driving the other motor vehicle at the time of the accident, and that Ms. Wilson had negligently entrusted her motor vehicle[1] to Broady, or, in the alternative, that Broady was Ms. Wilson's agent at the time he was operating the motor vehicle.
At his April 15, 1999 deposition, Wilson testified that Broady was not the driver of the other vehicle involved in the accident, and that another man, whom he did not know, was the driver. At her deposition taken the same day, Ms. Wilson testified that Broady had been driving the vehicle with her permission at the time of the accident.
On August 20, 1999, Wilson filed a second amended complaint, joining Progressive Casualty Insurance Company as a party to the action. Although Wilson still alleged that Broady was the driver of the other vehicle, he now alleged, in an alternative claim for relief, that his injuries were caused by an uninsured/underinsured motorist, whose name Wilson did not provide, and that Progressive was liable to him pursuant to the uninsured/underinsured provision of his automobile insurance policy with Progressive.
On January 28, 2000, Progressive moved for summary judgment on the ground that Wilson had breached his duty, under the terms of the insurance policy, to protect Progressive's right to subrogation by failing to join the uninsured/underinsured motorist as a party to the action pursuant to the procedure for designating unknown defendants in pleadings outlined in Civ.R. 15(D),[2] prior to the expiration of the two-year statute of limitations period contained in R.C. 2305.10 for filing actions for personal injury and property damages, thereby precluding Progressive from taking any action against the unnamed tortfeasor.
On March 22, 2000, the trial court granted Progressive's summary judgment motion. Wilson immediately appealed to this court. This appeal was dismissed for lack of a final appealable order. Wilson then arrived at settlements with defendants Broady and Wilson,[3] who were subsequently dismissed from the action.
Wilson appeals from the trial court's award of summary judgment in favor of Progressive.
 II
Rather than presenting an assignment of error for review, Wilson advances the following proposition of law:
 ABSENT EXPRESS LANGUAGE IN THE INSURANCE POLICY, AN INSURED NEED NOT FILE A LAWSUIT AGAINST AN UNIDENTIFIED HIT-AND-RUN DRIVER TO MAINTAIN AN UNINSURED MOTORIST CLAIM.
Essentially, Wilson argues that the trial court erred by awarding summary judgment to Progressive on the basis that he breached his duty to protect Progressive's subrogation rights by failing to file a lawsuit against the unnamed uninsured/underinsured motorist prior to the expiration of the statute of limitations, because there was no express language in the policy requiring him to do so.
A trial court may award summary judgment pursuant to Civ.R. 56 where there is no genuine issue of material fact remaining to be litigated; the moving party is entitled to judgment as a matter of law; and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party who is entitled to have the evidence viewed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64.
The insurance policy between Wilson and Progressive contains the following subrogation clause:
 [i]n the event of any payment under this policy, we are entitled to all of the rights of recovery that the insured person to whom payment was made has against another. That insured person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights, and do nothing after an accident or loss to prejudice our rights.
Wilson argues that the phrase "do whatever else is necessary to help us exercise those [subrogation] rights * * *" is ambiguous, and, therefore, the policy language must be strictly construed in his favor and against its drafter, Progressive. Consequently, Wilson asserts that because the language used in the subrogation clause does not expressly require him to bring an action against an unknown, uninsured, underinsured motorist, he should not be required to do so in order to bring an uninsured/underinsured motorist claim against Progressive.
A subrogation clause is a valid and enforceable precondition to an insurer's duty to provide uninsured/underinsured motorist coverage. Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus. Insurance policies are to be construed in accordance with the same rules applicable to any other written contract; therefore, where the language of a provision in an insurance policy is clear and unambiguous, a court may not resort to construction of that language in order to find coverage where it is clear that no coverage was intended. Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665.
The language used in the subrogation clause imposing a duty upon the insured to "do whatever * * * is necessary" to help the insured exercise its right to subrogation is not ambiguous because it fails to set forth with specificity just exactly what an insured must do to protect an insurer's subrogation rights. The language is necessarily general in nature since it is intended to cover any number of circumstances that might arise, including circumstances that might reasonably be foreseen by either party. Furthermore, in order to fulfill his duty under the subrogation clause under the unusual circumstances of this case, Wilson did not necessarily have to file an action against the unknown, uninsured/underinsured motorist; that became necessary only when Wilson chose to wait until the last day of the applicable statute of limitations period before bringing his uninsured/underinsured motorist claim against Progressive. Wilson could have fulfilled his duty to protect Progressive's subrogation rights by notifying Progressive in a timely manner of his alternative theory of the case, i.e., that the driver of the vehicle that had caused the accident could not be identified, and that he, therefore, intended to make an uninsured/underinsured motorist claim. This would have permitted Progressive to instruct Wilson of any steps that it might reasonably require him to take to protect Progressive's subrogation rights, or otherwise to take steps itself to protect its rights. By his own deposition testimony, Wilson knew, at least by April 15, 1999, that Broady was not the driver of the other vehicle that had injured him; however, he did not bring his uninsured/underinsured motorist claim against Progressive until it was too late for it to bring an action against the unidentified motorist.
In support of his argument, Wilson cites Mehl v. Motorist Mutual Insurance Co. (1992), 79 Ohio App.3d 550, in which it was held that a subrogation clause similar to the one at issue here did not require the insured to file a lawsuit against a tort-feasor before the statute of limitations had expired, because it found that the phrase "whatever is necessary" was "unclear and ambiguous" since it was "silent as to what precisely the insured must do[,]" and, therefore, was "unenforceable." Id. at 553-554.
Although we disagree with the Mehl court's conclusion that the phrase, "whatever is necessary" is ambiguous because it fails to specify what precise acts an insured must take to protect an insurer's subrogation rights, we nevertheless find that Mehl is distinguishable from the case before us. In explaining the rationale for its holding, the Mehl court stated, in pertinent part, as follows:
 Motorists [the insurer] reproached Mehl [the insured] for failure to act within the statute of limitations, yet, generally, policy holders would not know that an action for bodily injury must be commenced within two years. Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63, 64, 543 N.E.2d 488, 489. Interpretation of statutes of limitations can be difficult, and "[t]o resolve these questions, the layman needs an attorney." Id. "It is not desirable to force a policyholder to retain counsel in order to avoid statute of limitations problems." Id. at fn. 2. Mehl, supra, at 553.
It appears from the above language that the insured in Mehl was not represented by an attorney before the two-year statute of limitations period pertaining to actions for bodily injury had expired, and the court was concerned about whether a layperson would be familiar with the applicable two-year statute of limitations period. By contrast, in this case, the evidence reveals that Wilson was represented by counsel from shortly after the event occurred.
An ambiguous provision in an insurance contract must be strictly construed against the insurer. But that does not operate to read the provision out of the contract. Where, as here, the provision is necessarily elastic, it must be given a reasonable construction, and that construction must be in the insured's favor. Thus, the phrase, "whatever else is necessary to help us exercise those [subrogation] rights," must be construed narrowly, but not unreasonably. In our view, it is unreasonable for an insured who, after filing suit against the presumed tortfeasor, who may have been solvent, adequately insured, or both, learns in the course of discovery that the named defendant is not, in fact, the tortfeasor, not to notify an insurer against whom he intends to make an uninsured/underinsured motorist claim of this surprising development, reasonably promptly, so that the insurer can instruct the insured what steps to take, or itself take steps, to protect the insurer's subrogation rights.
Wilson's sole assignment of error is overruled.
 III
Wilson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.
[1] Ms. Wilson's mother, the titled owner of the vehicle, allowed Sharon to use the vehicle.
[2] Civ.R. 15(D) states, "[w]hen the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly. The plaintiff, in such case, must aver in the complaint the fact that he could not discover the name. The summons must contain the words "name unknown," and the copy thereof must be served personally upon the defendant."
[3] Wilson represents in his appellate brief that he reached a "nuisance value settlement" with Broady. Progressive represents that Wilson's settlement with Broady and Wilson was for "considerably more" than nuisance value. This dispute is of no consequence to our decision in this matter."