DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated appeal comes to us from a summary judgment issued by the Wood County Court of Common Pleas in a case involving an insurance claim for damaged glass. Because we conclude that no material issues of fact remain in dispute and that appellee was entitled to judgment as a matter of law, we affirm.
 {¶ 2} In 1998 or 1999, appellant, Michael Heban, purchased 2,200 panes of clear glass for use in the construction of a commercial greenhouse. The glass was packaged in open top 100 pane bundles and then stacked on pallets upright on edge. Heban stored the glass outside and initially covered it with a tarpaulin which blew off from time to time. Although at first Heban would replace that tarpaulin, eventually he stopped doing so, thus, allowing the glass to be exposed to the elements.
 {¶ 3} About two years after the purchase, when Heban removed the glass from storage, he discovered that the glass had become discolored. Heban contacted appellee, Auto-Owners Insurance Company ("Auto-Owners"), the issuer of his commercial insurance policy, and initiated a claim. Auto-Owners denied the claim, stating that the damage was caused by maintenance corrosion, a condition specifically excluded under the policy language.
 {¶ 4} Heban sued Auto-Owners to challenge the denial of his claim.[1] Auto-Owners filed a motion for summary judgment, along with the affidavit of Dennis L. McGarry, an engineer and professor at Ohio State University. McGarry opined that the glass was corroded due to extended exposure to moisture between the closely stacked panes of glass. In turn, Heban offered the affidavit of Carlo Pantano, an engineer and professor at Penn State University. After reviewing all evidence presented, the trial court granted summary judgment in favor of Auto-Owners, noting that regardless of the length of time involved, the damage to the glass was caused by corrosion due to improper maintenance of the glass. Therefore, the court ruled that the claim was properly excluded by the policy language.
 {¶ 5} Heban now appeals from that judgment, setting forth the following two assignments of error:
 {¶ 6} "First Assignment of Error
 {¶ 7} "The trial court erred in holding that every corrosion loss, regardless of the length of time required to create the corrosion, is a `maintenance' type loss.
 {¶ 8} "Second Assignment of Error
 {¶ 9} "The trial court erred in granting summary judgment to the insurance company which had the burden of proof, when the insurance company presented expert testimony which stated it was only a possibility that the loss had occurred in the fashion claimed by the insurance company and used as the basis for denial of coverage."
 {¶ 10} We will address both assignments of error together.
 {¶ 11} The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court.Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 12} A motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Finally, it is well-established that an appellate court reviews summary judgments de novo; such judgments are reviewed independently and without deference to the trial court's determination. Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41; Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711.
 {¶ 13} Insurance policies are generally interpreted by applying rules of contract law. Burris v. Grange Mut. Cos. (1989), 46 Ohio St.3d 84,89, overruled on other grounds, Savore v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500, paragraph one of the syllabus. If the insurance policy language is uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured.Faruque v. Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34,38, citing to Buckeye Union Ins. Co. v. Drice (1974), 39 Ohio St.3d 95, at the syllabus. However, where the terms of an insurance policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction. Santana v. Auto Owners Ins. Co. (1993),91 Ohio App.3d 490, 494. In other words, the court must enforce the plain and ordinary meaning of unambiguous language as written. Nationwide Mut.Ins. Co. v. Finkley (1996), 112 Ohio App.3d 712, 715; Mehl v. MotoristsMut. Ins. Co. (1992), 79 Ohio App.3d 550, 554.In this case, the commercial insurance policy reads, in pertinent part:
 {¶ 14} "B. EXCLUSIONS
 {¶ 15} "* * *
 {¶ 16} "2. We will not pay for loss or damage caused by or resulting from any of the following:
 {¶ 17} "* * *
 {¶ 18} "(d) Maintenance type losses:
 {¶ 19} "* * *
 {¶ 20} (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself. * * *"(Emphasis added.)
 {¶ 21} Webster's Dictionary, 10th Edition, defines corrosion as " the action, process, or effect of corroding." Therefore, "corrosion" includes not only the end result, but the ongoing stages of the process of corroding.
 {¶ 22} In this case, it is undisputed that for two years, the glass was stored outside, uncovered and subject to every weather condition, including rain and snow. It is also undisputed that corrosion caused the discoloration of the glass. Professor McGarry, Auto-Owner's expert, states that Heban's improper storage allowed moisture to enter the open bundles of glass panes, causing the corrosion. Professor Pantano, Heban's expert, does not dispute that the glass panes are corroded or that Heban's storage method permitted moisture to enter the bundles. He simply states that, without knowing certain factors such as temperature, humidity, temperature-cycling, exposure to liquid water and the "nature of interleaving," it is impossible to determine the exact length of time needed for the packed sheets of glass to become corroded. Thus, the only dispute between the experts seems to be the length of time for the condition to have occurred. Although they may differ on how long it might take for corrosion of the panes, both experts agree that corrosion is caused by chemical reactions happening when moisture is trapped between the panes of glass.
 {¶ 23} In addition, Heban acknowledged in his deposition that he did not cover or store the glass to protect it from exposure to moisture. Thus, no matter whether the corrosion occurred in two years, two weeks, or two days, reasonable minds could only conclude that it was caused by Heban's own improper storage and maintenance of the glass. In our view, under the plain and ordinary meaning of the terms of the insurance contract, the damage to the glass was properly excluded as maintenance type corrosion. Therefore, we conclude that summary judgment was properly granted in favor of appellee since no material facts remain in dispute and reasonable minds could only conclude that appellant is entitled to judgment as a matter of law.
 {¶ 24} Accordingly, appellant's two assignments of error are not well-taken and the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
Knepper and Singer, JJ., concur.
[1] Heban also sued Alex N. Sill Company ("Sill"), an agent which he had retained to try to obtain coverage under the Auto-Owners policy. Although Sill was unable to effect recovery on behalf of Heban, the company was included as a party defendant, since it claims it is entitled to 10% of any amount recovered under the policy.