JOURNAL ENTRY AND OPINION
{¶ 1} Appellants, CPS Holdings, Inc., CPS Holding Company, Ltd., and I.Q. Solutions, L.L.C. (hereafter collectively "CPS"), along with the State of Ohio, Department of Administrative Services ("DAS"), appeal the trial court's decision in favor of appellees, Cincinnati Insurance Company ("CIC") and Gulf Underwriters Insurance Company ("Gulf"). The parties filed competing cross-motions for summary judgment/declaratory relief, and the trial court denied appellants' motion and granted appellees' motion. Upon review of the record and the arguments of the parties, we now reverse and remand the matter to the trial court for the reasons set forth below.
 {¶ 2} This appeal stems from a dispute between appellants CPS and DAS. CPS, as a third-party administrator, originally contracted with DAS to provide natural gas services to state agencies. DAS claims that during the course of this relationship, CPS mismanaged state funds and breached its contractual duties. Essentially, DAS contends that CPS failed to use the money it was paid to obtain natural gas services and instead kept and commingled those funds with its own funds. DAS claims a total loss in excess of $5,771,302.
 {¶ 3} On May 30, 2003, DAS filed suit in Franklin County Common Pleas Court. The original complaint set forth claims for negligence, professional negligence, breach of implied warranty, breach of contract, breach of express warranty, conversion, and unjust enrichment. On December 8, 2003, DAS filed an amended complaint, adding parties and claims for the recovery of public funds, pursuant to R.C. 117.28, and piercing the corporate veil.
 {¶ 4} CPS sought a defense of the lawsuit from its liability insurers, appellees Gulf and CIC among them, and both insurers denied any defense obligation. As previously mentioned, the underlying litigation was filed and is properly located in Franklin County. However, in an unexplained tactic, CIC filed for declaratory judgment against CPS in the Cuyahoga County Court of Common Pleas. While it was acknowledged that the instant suit would probably best be litigated in Franklin County, the trial court accepted the filing and this matter went forward in Cuyahoga County. CPS then filed a counterclaim against CIC, Gulf, and other insurers. Both sides filed cross-motions for summary judgment and declaratory relief. On October 29, 2004, the trial court held a hearing to permit all parties to present arguments on the summary judgment and declaratory relief issues. The trial court issued its opinion and judgment entry against CPS and in favor of the insurers on January 24, 2005.
 {¶ 5} Appeals were brought by both CPS (Cuy. App. No. 85967) and DAS (Cuy. App. No. 85969) solely against appellees CIC and Gulf. Those appeals have been consolidated in the interest of judicial economy. Both appellants assert essentially the same assignments of errors, which are listed in the appendix of this opinion.
 Standard of Review {¶ 6} In general, Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 {¶ 7} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 1992-Ohio-96, 604 N.E.2d 138.
 {¶ 8} This court reviews the lower court's granting of summary judgment de novo. Brown v. County Comm'rs (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the granting of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. The motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741, 607 N.E.2d 1140. However, a determination as to the duty to defend is a legal issue to be decided by the court, not a factual issue for a jury to resolve.Leber v. Smith (1994), 70 Ohio St.3d 548, 639 N.E.2d 1159;Erie Ins. Group v. Fisher (1984), 15 Ohio St.3d 380,474 N.E.2d 320.
 Policy Analysis in General {¶ 9} In Hionis v. Nationwide Inc. Co., Cuyahoga App. No. 80516, 2003-Ohio-1333, this court held the following when construing contracts of insurance:
 {¶ 10} "Where the terms of an insurance policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction. Santana v. Auto Owners Ins. Co.
(1993), 91 Ohio App.3d 490, 632 N.E.2d 1308, appeal dismissed,69 Ohio St.3d 182, 1994-Ohio-418, 631 N.E.2d 123. When the policy terms have a plain and ordinary meaning, it is not necessary or permissible for a court to construe a different meaning. Ambrosev. State Farm Fire Cas. (1990), 70 Ohio App.3d 797, 800,592 N.E.2d 868, jurisdictional motion overruled (1991),60 Ohio St.3d 709, 573 N.E.2d 671. In other words, `the plain meaning of unambiguous language will be enforced as written.' Mehl v.Motorists Mut. Ins. Co. (1992), 79 Ohio App.3d 550,607 N.E.2d 897. Nationwide Mut. Ins. Co. v. Finley (1996),112 Ohio App.3d 712, 679 N.E.2d 1189. Further:
 {¶ 11} "Insurance policies are generally interpreted by applicable rules of contract law. Burris v. Grange Mut. Cos.
(1989), 46 Ohio St.3d 84, 545 N.E.2d 83. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. Faruque v. Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34, 31 Ohio B. 83,508 N.E.2d 949. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none.Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163,166-167, 10 Ohio B. 497, 462 N.E.2d 403. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 15 Ohio B. 448, 474 N.E.2d 271.' Progressive Ins. Co. v. Heritage Ins. Co.
(1996), 113 Ohio App.3d 781, 784-785, 682 N.E.2d 33." Id.
 The Gulf Policy {¶ 12} There were two "claims made" policies issued to CPS by Gulf. The first policy was effective from November 13, 2001 to November 13, 2002. The parties later amended the effective dates to include December 13, 2001 through December 13, 2002. The second policy renewed the first policy with effective dates of December 13, 2002 through December 13, 2003. Both policies contained a retroactive date of November 13, 1997. After review of the facts, policy language, and applicable law, the trial court, in a very extensive opinion, entered a ruling in favor of Gulf. While this court recognizes the thoroughness of the trial court in this matter as evidenced by its opinion, we respectfully disagree with its findings.
 {¶ 13} The trial court's decision focused on the chronology of events in conjunction with a "claims made" policy. With "claims made" policies, "[o]nly claims made against the insured during the policy period * * * will be considered within the scope of coverage, even if the acts giving rise to liability occurred before the policy went into effect." (J.E. pg. 5, citingLaValley v. Virginia Sur. Co. [2000, N.D. Ohio],85 F.Supp.2d 740, 744.)
 {¶ 14} Under the Gulf policy, a "claim" is defined as: "* * * a demand or assertion of a legal right seeking Damages made against any of You." (Gulf policy, pg. 14.)
 {¶ 15} The Gulf policy further reads: "We will consider aClaim to be first made against You when a written Claim is first received by any of You." (Gulf policy, pg. 10.)
 {¶ 16} CPS first became aware of the accusations forming the basis of DAS' eventual complaint through a letter it received from DAS dated November 14, 2002, which was within the first policy period. In that letter, DAS advised that CPS had failed to uphold its contractual obligations. DAS specifically claimed that CPS had not made timely payments in accordance with the contract and demanded payment of those obligations. DAS concluded the letter by demanding a cure from CPS, stating that if CPS failed to cure, CPS "[would] be liable for any additional cost that the state incurs for replacement services as well as any other damages related to the breach."
 {¶ 17} The trial court found that this communication did not constitute a demand as defined by the policy; however, a review of the record leads this court to conclude that the November 14, 2002 letter was indeed a "demand or assertion of a legal right seeking damages" because the letter clearly made assertions of damages incurred due to the actions of CPS. The letter also asserted the legal liability of CPS to compensate the injured parties for those damages.
 {¶ 18} The lower court held that a claim was not officially asserted by DAS until its letter to CPS dated January 8, 2003. The substance of that letter was confined to one sentence, which reads: "The purpose of this letter is to formally put you on notice of our claim for damages as a result of your breach of duty relating to the above captioned contract with the State of Ohio." This court, however, finds that the November 14, 2002 letter more fully articulated DAS' claim of damages, thus placing DAS' complaint within the appropriate time frame to trigger Gulf's duty to defend.
 {¶ 19} The claims asserted in DAS' complaint also fall within the scope of Gulf's duty to defend. According to the terms of the policy, Gulf has a "right and duty to appoint an attorney and defend a covered Claim, even if the allegations are groundless, false or fraudulent." (Gulf policy, pg. 8.) Covered claims under the policy include "Wrongful Acts," such as: "1. A negligent act, error or omission." (Gulf policy, pg. 15.)
 {¶ 20} The claims asserted by DAS in its underlying complaint include claims of negligence and professional negligence. These claims are clearly covered under the wrongful acts portion of the Gulf policy. In Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, the Ohio Supreme Court held the following:
 {¶ 21} "Where the pleadings unequivocally bring the action within the coverage afforded by the policy, the duty to defend will attach. However, where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim. Thus, the scope of the allegations may encompass matters well outside the four corners of the pleadings." Id., syllabus.
 {¶ 22} This court finds that DAS's November 14, 2002 letter triggered Gulf's duty to defend under the terms of the policy. Any analysis of the substantive facts giving rise to DAS' complaint by the trial court is beyond the scope of consideration at a summary judgment/declaratory judgment proceeding. Further, such proceeding is not the proper forum at which to determine Gulf's duty to indemnify since the underlying complaint is still pending. This court finds merit in appellants' assignments of error concerning Gulf's duty to defend. The lower court's finding that Gulf has no duty to defend is therefore reversed.
 The CIC Policy {¶ 23} CIC insured CPS under a primary commercial general liability policy (No. 0723237) and an umbrella policy (No. 4477548). The primary policy provided comprehensive commercial coverage between June 1, 2000 and June 1, 2003, insuring CPS against personal injury and property damage claims. Upon review of the terms as defined by the policy, the trial court found that the claims made by DAS were not covered by this primary policy. Appellants have now conceded that determination; however, they challenge the trial court's finding that the umbrella policy "increases the coverage limits but not the scope of coverage." (J.E., pg. 2.)
 {¶ 24} It is appellants' contention that if there is potential coverage for CPS under the terms of the Gulf policy, then there is potential coverage under the CIC umbrella policy. They argue that the umbrella policy requires CIC to pay any damages in excess of the underlying insurance, which the policy defines as:
 {¶ 25} "* * * the policies of insurance listed in the Schedule of Underlying Policies and the insurance available tothe insured under all other insurance policies applicable to theoccurrence. Underlying insurance also includes any type of self-insurance or alternative method by which the insured arranges funding for legal liabilities that affords coverage that this policy covers." (Emphasis added.)
 {¶ 26} The only policy listed in the Schedule of Underlying Policies is the CPS Primary Policy (No. 0723237). However, the underlying insurance language, "and the insurance available to the insured under all other insurance policies applicable to the occurrence," can be read as covering parallel policies such as CPS' Gulf policy. "If a court finds that the language in question in an insurance policy is reasonably susceptible of more than one meaning, the court will construe it liberally in favor of the insured and strictly as against the insurer." Buckeye Union Ins.Co. v. Price (1974), 39 Ohio St.2d 95, 311 N.E.2d 844, syllabus.
 {¶ 27} Since this court has found that the Gulf policy requires a duty to defend, that policy arguably falls within the underlying insurance language. We, therefore, agree with appellants' contention that CIC does have a duty to defend since the Gulf policy falls under CIC's umbrella policy. Thus, the lower court's finding that CIC has no duty to defend is reversed.
 Conclusion {¶ 28} We respectfully find that the lower court erred in determining that appellees' insurance policies did not create a duty to defend and/or indemnify appellants.
Judgment reversed and case remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants recover of appellees costs herein taxed.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Mary Eileen Kilbane, J., concurs;
 Colleen Conway Cooney, J., Dissents (with Separate DissentingOpinion).
 DISSENTING OPINION